Alan D. Reitzfeld
Sarah G. Passeri
Holland & Knight LLP
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010
*Attorneys for Defendant*
*Turk Hava Yollari A.O.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GLEISSNER<br><br>                              Plaintiff,<br><br>          - against -<br><br>TURK HAVA YOLLARI ANONIM<br>ORTAKLIGI,<br><br>                              Defendant. | Civil Action No.: 1:16-cv-8287-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF THY'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

STANDARD OF PROOF ........................................................................................ 5

ARGUMENT ........................................................................................................... 6

POINT I THIS COURT LACKS PERSONAL JURISDICTION OVER THY .............................. 6

    A.    General Jurisdiction Is Absent Because THY Is Not "Essentially At Home" In New York ................................................................................................ 7

    B.    Specific Jurisdiction Is Absent Because THY Lacks Sufficient Contacts with New York That Give Rise To Plaintiff's Claim ...................................... 8

POINT II THE MONTREAL CONVENTION GOVERNS, PREEMPTS PLAINTIFF'S STATE-LAW CAUSES OF ACTION, AND NECESSITATES DISMISSAL ................ 9

    A.    The Montreal Convention Governs Plaintiff's Claims Against THY ................... 10

    B.    The Montreal Convention Provides The Exclusive Cause Of Action And Completely Preempts Plaintiff's Claims ................................................... 12

    C.    This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Action Under Article 33 Of The Montreal Convention ................................................... 14

        1.    THY's Domicile And Principal Place Of Business Are In Turkey ............. 15

        2.    The Contract Of Carriage Was Made Outside The United States ............. 15

        3.    Plaintiff's Destinations Was Outside The United States ........................... 16

        4.    Plaintiff's  Principal And Permanent Residence Was In Hong Kong At The Time Of The Incident ..................................................................... 16

    D.    Even If Subject Matter Jurisdiction Is Proper In The United States, Plaintiff Cannot Maintain An Action Under Article 19 Of The Montreal Convention ....... 17

POINT III ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF WILL BE UNABLE TO RAISE ANY ISSUES OF MATERIAL FACT  CONCERNING HIS CLAIMS UNDER NEW YORK LAW ........ 19

    A.    Plaintiff Will Be Unable To Present Any Evidence Of Negligent Infliction Of Emotional Distress ................................................................................ 19

    B.    Plaintiff's Complaint Misapplies The Nuisance Doctrine And Plaintiff Cannot Present Any Evidence Of Nuisance ........................................................ 21

        1.    Plaintiff Cannot Prove Private Nuisance ................................................ 22

        2.    Plaintiff Cannot Prove Public Nuisance ................................................. 23

CONCLUSION ....................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbatiello v. Monsanto Co.*,
   522 F. Supp. 2d 524 (S.D.N.Y. 2007)................................................................22

*In re Air Crash Disaster at Malaga, Spain on Sept. 13, 1982*,
   577 F. Supp. 1013 (E.D.N.Y. Jan. 30, 1984) ........................................16

*In re Air Disaster at Lockerbie, Scotland*,
   928 F.2d 1267 (2d Cir. 1991), *cert. denied*, 502 U.S. 920 (1991).........................13

*Alam v. Pakistan Int'l Airlines Corp.*,
   No. 92-cv-4356, 1995 WL 17201349 (S.D.N.Y. July 27, 1995)............................12

*Baah v. Virgin Atlantic Airways Ltd.*,
   473 F. Supp. 2d 591 (S.D.N.Y. 2007)...................................................10, 14, 15

*Baker v. Dorfman*,
   239 F.3d 415 (2d Cir. 2000)...............................................................21

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*,
   362 N.E.2d 968 (1977)....................................................................23

*Cordice v. LIAT Airlines*,
   No. 14-cv-2924, 2015 WL 5579868 (E.D.N.Y. Sept. 22, 2015) .............................9

*Cortlandt Street Recovery Corp. v. Deutsche Bank AG, London Branch*,
   No. 14-cv-1568, 2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015) (Oetken, J.)......................7, 9

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................ *passim*

*Davies v. Cty. of Nassau*,
   260 A.D.2d 531, 688 N.Y.S.2d 238 (2d Dep't 1999) .............................................20

*Ehrlich v. Am. Airlines, Inc.*,
   360 F.3d 366 (2d Cir. 2004)................................................................10, 18

*El Al Israel Airlines, Ltd. v. Tseng*,
   525 U.S. 155 (1999)...............................................................10, 13

*Fields v. BWIA Intern. Airways Ltd.*,
   No. 99-cv-2493, 2000 WL 1091129 (E.D.N.Y. July 7, 2000)................................18

*Fishman v. Delta Air Lines*,
    132 F.3d 138 (2d Cir. 1998)................................................................13

*Gate Techs., LLC v. Delphix Capital Markets, LLC*,
    No. 12-cv-7075, 2013 WL 3455484 (S.D.N.Y. July 9, 2013).................20

*Gayada v. LOT Polish Airlines*,
    702 F.2d 424 (2d Cir. 1983)................................................................16

*Ginsberg v. Am. Airlines*,
    No. 09-cv-3226, 2010 WL 3958843 (S.D.N.Y. Sept. 27, 2010) ...........13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct 2846 (2011)..........................................................................9

*Howard v. Lecher*,
    42 N.Y.2d 109, 366 N.E.2d 64 (1977)..................................................21

*Johnson v. Killian*,
    680 F.3d 234 (2d Cir. 2012)..................................................................6

*Johnson v. State*,
    37 N.Y.2d 378, 334 N.E.2d 590 (1975).................................................21

*Kayvan Karoon, et al. v. Credit Suisse Group AG*,
    No. 15-cv-4643, 2016 WL 815278 (S.D.N.Y. Feb. 29, 2016) ................8

*King v. Am. Airlines*,
    284 F.3d 353 (2d Cir. 2002)................................................................13

*Klos v. Polskie Linie Lotnicze*,
    133 F.3d 164 (2d Cir. 1997)................................................................16

*Kruger v. United Airlines, Inc.*,
    No. 06-cv-4907, 2007 WL 3232443 (N.D. Cal. Nov. 1, 2007) .............14

*LaJoy v. Luck Bros.*,
    34 A.D.3d 1015, 826 N.Y.S.2d 759 (3d Dep't 2006)............................22

*Lee v. China Airlines, Ltd.*,
    669 F. Supp. 979 (C.D. Cal. 1987) ............................................... *passim*

*MacDermid, Inc. v. Deiter*,
    702 F.3d 725 (2d Cir. 2012)..................................................................6

*Manchanda v. Google*,
    No. 16-cv-3350, 2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016)............20

*Minhas v. Biman Bangladesh Airlines*,
  No. 97-cv-4920, 1999 WL 447445 (S.D.N.Y. June 30, 1999) ................................................12

*Molander v. Pepperidge Lake Homeowners Ass'n*,
  82 A.D.3d 1180 (2d Dep't 2011) .................................................................................22

*Muoneke v. Compagnie Nationale Air France*,
  330 Fed. Appx. 457 (5th Cir. 2009) ............................................................................18

*Nalley v. Gen. Elec. Co.*,
  630 N.Y.S.2d 452 (Sup. Ct., Rensselaer Cnty. 1995) ............................................................22

*Nicholson v. A. Anastasio & Sons Trucking Co.*,
  77 A.D.3d 1330, 909 N.Y.S.2d 244 (4th Dep't 2010) ........................................................20

*Nieblas-Love v. N.Y. City Hous. Auth.*,
  165 F. Supp. 3d 51 (S.D.N.Y. 2016)..........................................................................19, 21

*Olaya v. Am. Airlines, Inc.*,
  No. 08-cv-4853, 2009 WL 3242116 (E.D.N.Y. Oct. 6, 2009) .................................................13

*Osborne v. British Airways PLC Corp.*,
  198 F. Supp. 2d 901 (S.D. Tex. 2002) .....................................................................15, 16

*Paradis v. Ghana Airways*,
  348 F. Supp. 2d 106 (S.D.N.Y. 2004).......................................................................... *passim*

*Pflug v. Egyptair Corp.*,
  961 F.2d 26 (2d Cir. 1992)......................................................................................15

*Potter v. Delta Air Lines, Inc.*,
  98 F. 3d 881 (5th Cir. 1996) ....................................................................................13

*Rombom v. United Air Lines, Inc.*,
  867 F. Supp. 214 (S.D.N.Y. 1994) ..............................................................................19

*Sassouni v. Olympic Airways*,
  769 F. Supp. 537 (S.D.N.Y. 1991) ..............................................................................12

*Singh v. N. Am. Airlines*,
  426 F. Supp. 2d 38 (E.D.N.Y. 2006) .......................................................................10, 13

*Sopcak v. Northern Mountain Helicopter Serv.*,
  52 F.3d 817 (9th Cir. 1995).................................................................................11, 14

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014).......................................................................................... *passim*

*Williams v. Dow Chem. Co.*,
   No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) .............................................23

*Wyler v. Korean Air Lines Co.*,
   928 F.2d 1167 (D.C. Cir. 1991) ..............................................................................................15

**Statutes and Other Authorities**

49 U.S.C.A. § 40105 (1997) ..............................................................................................................14

Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ......................................................................19

Convention for the Unification of Certain Rules for International Carriage by Air,
   done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force
   on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL
   33292734 .......................................................................................................................... *passim*

Fed. R. Civ. P. Rule 56 .......................................................................................................... *passim*

N.Y. C.P.L.R. § 302 (a) .....................................................................................................................8

## PRELIMINARY STATEMENT

Defendant Turk Hava Yollari Anonim Ortakligi ("THY") respectfully moves for an order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting summary judgment to THY and dismissing Plaintiff's Complaint in its entirety because: (1) there is no personal jurisdiction over THY in New York; (2) even if there were personal jurisdiction over THY, (i) there is no subject matter jurisdiction in the United States under the Montreal Convention, Article 33, which completely preempts Plaintiff's state-law claims and provides the exclusive cause of action and (ii) even if there was, Plaintiff is unable as a matter of law to prove damages under Article 19; and (3) alternatively, Plaintiff is unable as a matter of law to prove a cause of action under New York law for negligent infliction of emotional distress and nuisance against THY; and  for such other and further relief as the Court deems just and proper.

Plaintiff asserts two state-law causes of action against THY—negligent infliction of emotional distress and nuisance—allegedly arising from THY's alleged cancellation of Plaintiff's and his family's reservations to return home to Hong Kong following a vacation in Italy. Plaintiff's claim has no connection whatsoever to New York.  Plaintiff's travel was on a Turkish airline between Singapore, Turkey, Italy, and Hong Kong—not New York or anywhere in the United States.   The alleged wrongful acts, *i.e.*, cancellation of his flight, occurred in Italy. Neither party to this litigation is a citizen of the United States—Plaintiff is a citizen of Germany and a principal and permanent resident of Hong Kong and THY is a Turkish corporation with its principal place of business in Istanbul, Turkey.  Accordingly, there is no general jurisdiction over THY—a Turkish corporation with its principal place of business in Turkey—and no specific jurisdiction over THY because this litigation has no connection to New York, much less THY's operations (if any) in New York.

Alternatively, even if, *arguendo*, jurisdiction was proper, Plaintiff's state-law claims are completely preempted by the Montreal Convention[1], and Plaintiff's sole cause of action lies in Article 19.  Despite THY calling Plaintiff's attention to this issue at the outset of this action, Plaintiff failed to amend his Complaint to assert a cause of action under Article 19.  Any amendment, at this point, would be futile because there is no subject matter jurisdiction over the claims in the United States under Article 33 because: (1) THY's domicile is in Turkey, (2) THY's principal place of business is in Turkey, (3) Plaintiff's contract of carriage was made in Hong Kong and Italy, (4) Plaintiff's destination was Hong Kong, and (5) Plaintiff's principal and permanent residence was in Hong Kong.  Additionally, even if there were treaty jurisdiction in the United States, Plaintiff's claim would be barred because he did not suffer any physical or recoverable economic injury and his claims for pure emotional injuries are not recoverable as a matter of law.

Even if the Court had jurisdiction over Plaintiff's state-law claims and such claims were not preempted by the Montreal Convention, summary judgment would still be proper because Plaintiff cannot prove his claims of negligent infliction of emotional distress (NIED) and nuisance against THY.  In fact, Plaintiff did not seek *any* discovery from THY during the pendency of this lawsuit.

For these reasons, summary judgment should be entered in favor of THY.

## STATEMENT OF FACTS

The facts relevant to this motion are detailed in the accompanying Rule 56.1 Statement. These facts prove that: (1) there is no personal jurisdiction over THY in New York; (2) there is no subject matter jurisdiction in the United States under Article 33 of the Montreal Convention;

---

[1] The treaty is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (henceforth "Montreal Convention").

(3) Plaintiff did not and cannot assert a claim, as required, under Article 19 of the Montreal Convention; and (4) in the alternative, Plaintiff is unable to prove his claims of negligent infliction of emotional distress and nuisance against THY as a matter of law.

*Plaintiff's ticketing and alleged delay*:   Plaintiff reserved tickets for international transportation for him and his family on THY for their vacation to Catania, Italy.   *See* Ex. A (Compl.), ¶ 7 and Ex. G (RFP), No. 2 to the Declaration of Sarah G. Passeri ("Passeri Decl."). Plaintiff's ticketing provided transportation from Singapore (SIN) to Catania, Italy (CTA) with an agreed stop in Istanbul, Turkey (IST) on August 25, 2016 and transportation from Catania, Italy (CTA) to Hong Kong (HKG) with an agreed stop in Istanbul, Turkey (IST) on August 28, 2016.  *See id*., Ex. G (RFP), No. 2.  On August 28, 2016—the same day that he was supposed to return to Hong Kong—Plaintiff allegedly changed his return flight to leave on September 1, 2016.  *See id*., Ex. A (Compl.), ¶ 10.  Plaintiff allegedly made the change to his reservation online through expedia.com while in Italy.  *See id*., Ex. F (Interrogatory Responses), No. 6.  That same day, he received an email from Expedia notifying him that THY had cancelled his newly made reservation.  *See id*., Ex. A (Compl.), ¶ 11.  The reason for the cancellation of Plaintiff's newly made reservation was that his initial reservation for return travel on August 28, 2016 was not actually cancelled.  *See* Declaration of Cenk Ocal ("Ocal Decl."), ¶ 6.  As a result, Plaintiff was listed as a "no show" for his initial reservation, which resulted in the cancellation of any subsequent reservations pursuant to the terms of THY's Conditions of Carriage.  *See id*., ¶¶ 6-8, Ex. A (Contract of Carriage).

Plaintiff immediately engaged his attorneys who sent a letter to both Expedia and THY in response to the cancellation email.  *See* Passeri Decl., Ex. A (Compl.), ¶ 13.  Plaintiff claims severe anxiety, emotional distress, and the possibility of substantial economic loss as a result of *a*

*fear of* "not being able to return to Hong Kong in time to oversee production of Robogirls". *See id.*, Ex. A, ¶¶ 21, 26. Plaintiff admits, however, that he never called THY to attempt to resolve the situation. *See id.*, Ex. F (Interrogatories), Nos. 7 and 8. The cancellation was ultimately reversed and ***Plaintiff and his family traveled on September 1, 2016 as scheduled***. *See id.*, Ex. E (RFA), No. 5. Nevertheless, Plaintiff claims that THY "did not offer a remedy for the situation for an unreasonable period of time." *Id.*, Ex. A (Compl.), ¶ 25.

*Jurisdiction*: Plaintiff is a citizen of Germany (*see id.* Ex. E (RFA), No. 1) and a principal and permanent resident of Hong Kong (*see id.* Ex. E, No. 2). Plaintiff's entire cause of action arose abroad allegedly from international transportation between Europe and Asia—it has no connection to New York. Additionally, the named defendant, THY, is a Turkish corporation with its principal place of business in Istanbul Turkey. *See* Ocal Decl., ¶ 3.

*New York lawsuit/Montreal Convention*: On or about September 19, 2016, Plaintiff brought an action arising from his fear of being delayed against THY in New York Supreme Court, Queens County. The Complaint alleged two causes of action under New York law— negligent infliction of emotional distress and nuisance. *See* Passeri Decl., Ex. A (Compl.). On or about October 18, 2016, the parties entered into a stipulation to, *inter alia*, amend the name of defendant from "Turkish Airlines, Inc." to "Turk Hava Yollari Anonim Ortakligi", a "foreign corporation duly established and existing under the laws of Turkey". *See id.*, Ex. B (Stip.). On or about October 24, 2016, THY removed the action on, *inter alia*, diversity grounds to this Court. *See id.*, ¶ 4. At the initial conference on December 7, 2016, Plaintiff's counsel advised the Court that Plaintiff is a foreign citizen and does not reside in the United States. *See id.*, ¶ 5. In response to the Court's request, THY submitted a letter on December 21, 2016 outlining the basis for federal question jurisdiction under the Montreal Convention, which exclusively governs

4

and preempts Plaintiff's state-law claims.  *See id.*, Ex. D (THY Ltr).  Despite being placed on notice of the Montreal Convention's application, Plaintiff did not amend his Complaint to allege a cause of action under the Montreal Convention.  In fact, Plaintiff did not act upon any of the discovery deadlines set forth in this Court's Scheduling Order: he did ***not*** serve Rule 26(a) initial disclosures; he did ***not*** serve paper discovery on THY; he did ***not*** request deposition testimony from THY; he did ***not*** file the Court-ordered status updates; he did ***not*** submit expert discovery. *See id.*, ¶¶ 13-15; *see also* Ex. C (Scheduling Order).  Discovery closed on April 6, 2017.  *See id.*[2]

Even if Plaintiff could amend his pleading post-discovery, there is no subject matter jurisdiction under Article 33 of the Montreal Convention because: (1) THY's domicile is in Turkey (*see* Ocal Decl., ¶ 3), (2) THY's principal place of business is in Turkey (*see id.*), (3) Plaintiff's contract of carriage was made in Hong Kong and Italy (*see* Passeri Decl., Ex. E (RFA), Nos. 3 and 4), (4) Plaintiff's destination was Hong Kong (*see id.*, Ex. A (Compl.), ¶ 7 and Ex. B), and (5) Plaintiff's principal and permanent residence was in Hong Kong (*see id.*, Ex. E (RFA), No. 2).  Additionally, Plaintiff could not state a claim under Article 19 of the Montreal Convention because Plaintiff and his family traveled on September 1, 2016 as scheduled (*see id.*, Ex. E (RFA), No. 5) and because Plaintiff does not allege any physical injuries, only "acute anxiety, restlessness and nervousness", as a result of the alleged fear of delay.  *See id.*, Ex. F (Interrogatories), Nos. 10 and 11.

## STANDARD OF PROOF

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] THY served Rule 26(a) initial disclosures and paper discovery and filed a status report with the Court, as required by the Scheduling Order.  THY respectfully reserves its rights to seek sanctions for Plaintiff's failure to serve Rule 26(a) initial disclosures.

law."  Fed. R. Civ. P. 56.  In ruling on the motion, a court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotations omitted).  However, "[c]onclusory statements or mere allegations are not sufficient to defeat a summary judgment motion." *Id.* (internal quotation marks omitted).  Summary judgment should be entered when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (internal quotation marks omitted).

Here, Plaintiff failed to propound any discovery in support of the allegations made in his Complaint and summary judgment is appropriate.

## ARGUMENT

### POINT I
### THIS COURT LACKS PERSONAL JURISDICTION OVER THY

A district court may exercise authority over a defendant by virtue of either general jurisdiction or specific jurisdiction.  General jurisdiction allows a court to assert jurisdiction over a defendant based on forum connections unrelated to the underlying suit, whereas specific jurisdiction depends on the substantial connection between the defendant's suit-related conduct and the forum.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 & n.6 (2014).  It is plaintiff's burden to demonstrate the existence of every fact required to satisfy jurisdiction over a defendant.  *See MacDermid, Inc. v. Deiter,* 702 F.3d 725, 727 (2d Cir. 2012).  In this action, Plaintiff is unable to meet this burden.  Accordingly, THY is subject to neither general jurisdiction nor specific jurisdiction in New York.

### A.   General Jurisdiction Is Absent Because THY Is Not "Essentially At Home" In New York

Because general jurisdiction is not predicated on the defendant's suit-related contacts, the standard for evaluating whether the defendant's forum contacts satisfy the constitutional general jurisdiction test is stringent—"only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014).   In *Daimler*, the United States Supreme Court rejected prior cases exercising general jurisdiction over a foreign corporation based on the corporation's "substantial, continuous, and systematic course of business" in the forum.   *See id.* at 760-61.   The Supreme Court found instead that the exercise of general jurisdiction is proper only where a corporation is "essentially at home".   *Id.* at 761.   The Supreme Court identified just two places where a corporation is "essentially at home": (1) its formal place of incorporation, and (2) its principal place of business.   *Daimler*, 134 S. Ct. at 760-61.

Here, Plaintiff claims THY is subject to general jurisdiction because it is "doing business" in New York.   *See* Passeri Decl., Ex. A (Compl.), ¶ 4.   As recognized by this Court, "doing business" is no longer enough post-*Daimler*.   *See Cortlandt Street Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-cv-1568, 2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015) (Oetken, J.) (citing *Daimler* and discussing its limiting effect on New York's "doing business" test).   THY is a Turkish corporation with its principal place of business in Istanbul, Turkey.   *See* Ocal Decl., ¶ 3; *see also* Passeri Decl., Ex. B (Stip.) (THY "is a foreign corporation duly established and existing under the laws of Turkey").   The Supreme Court made clear that absent truly exceptional circumstances—which are not alleged or present here—the two paradigmatic bases of general jurisdiction—place of incorporation and principal place of business—would govern.   *See Daimler,* 134 S. Ct. at 761 (holding that the defendant was not

subject to general jurisdiction in California, even assuming that billions of dollars' worth of sales and multiple California offices could be imputed to it); *see also Kayvan Karoon, et al. v. Credit Suisse Group AG*, No. 15-cv-4643, 2016 WL 815278, at *3 (S.D.N.Y. Feb. 29, 2016) (Oetken, J.) (finding allegations that Swiss banks continuously engaged in business in New York insufficient to establish general jurisdiction).   Accordingly, because neither THY's place of incorporation or principal place of business is in New York, this Court lacks general jurisdiction over it.

> **B.      Specific Jurisdiction Is Absent Because THY Lacks Sufficient Contacts With New York That Give Rise To Plaintiff's Claim**

The exercise of specific jurisdiction over a foreign defendant requires compliance with both the standards of New York's long-arm statute and the standards of the Due Process clause of the Fourteenth Amendment to the U.S. Constitution.   *See Walden*, 134 S.Ct. at 1121 (2014). Under New York's long-arm statute, a court may exercise jurisdiction where the non-domiciliary defendant:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302 (a).   The underlying cause of action must ***arise out of*** one of the aforementioned contacts with the forum.   *See id.* ("as to a cause of action arising from any of the acts enumerated in this section … .");   *see also Walden*, 134 S.Ct. at 1121 (finding that the relationship necessary to support jurisdiction "must arise out of contacts that 'the defendant

*himself* creates with the forum State"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct 2846, 2851 (2011) (requiring a connection between the forum and the underlying controversy); *see also Cortlandt Street Recovery Corp.*, 2015 WL 5091170, at *5.

Plaintiff does not assert a basis for specific jurisdiction over THY in this action.  In any event, specific jurisdiction does not exist because Plaintiff's cause of action arose wholly outside of New York, and indeed, outside of the United States.  Plaintiff—a German citizen and principal and permanent resident of Hong Kong (*see* Passeri Decl., Ex. E (RFA), Nos. 1 and 2)— purchased a ticket in Hong Kong (*see id.*, Ex. E, No. 3) for international travel between Singapore, Turkey, Italy, and Hong Kong (*see id.*).  Plaintiff allegedly made changes to his reservation while in Italy, which THY allegedly misapplied.  *See id.* Ex. E, No. 4.  The alleged harm to Plaintiff occurred in Italy and Hong Kong.  Plaintiff's action lacks any connection whatsoever to New York.  *See, e.g., Cordice v. LIAT Airlines*, No. 14-cv-2924, 2015 WL 5579868 (E.D.N.Y. Sept. 22, 2015) (finding that a purchase of a ticket in New York by a New York resident insufficient to establish jurisdiction over foreign airline where tort occurred outside New York).

For these reasons, this Court lacks specific jurisdiction over THY.

## POINT II
## THE MONTREAL CONVENTION GOVERNS, PREEMPTS PLAINTIFF'S STATE-LAW CAUSES OF ACTION, AND NECESSITATES DISMISSAL

Despite THY raising the issue of the application of the Montreal Convention at the outset of this action, Plaintiff has failed to amend his Complaint to properly assert a claim against THY under the Convention.  For this reason alone, the Complaint should be dismissed.  Even if Plaintiff could amend his pleading at this late stage, with discovery now over, any claim against THY under the Convention must fail because no court in the United States has subject matter

jurisdiction under Article 33 of the Convention and, even if there were subject matter jurisdiction, Plaintiff cannot prove that he is entitled to damages under Article 19.

A.       **The Montreal Convention Governs Plaintiff's Claims Against THY**

The Montreal Convention is a treaty of the United States and the supreme law of the land. The Convention expressly applies to "*all* international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention (MC), Art. 1(1).   The Convention "unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004).[3]   A central purpose of the Montreal Convention remains the unification of rules governing claims that arise from international air carriage.  *See Ehrlich*, 360 F.3d at 371 n.4 (Montreal Convention "harmonize[s] the hodgepodge of supplementary amendments and intercarrier agreements" making up the Warsaw system).

Where a plaintiff's claims fall within the scope of the Montreal Convention, its terms and conditions govern the action and preclude the plaintiff from bringing claims outside those terms and conditions.  *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 175 (1999); *see also Singh v. N. Am. Airlines*, 426 F. Supp. 2d 38, 44-45 (E.D.N.Y. 2006) (interpreting *Tseng* as authorizing complete preemption).  Specifically, Article 1(2) of the Montreal Convention defines "international carriage" as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

MC, Article 1(2).  Here, Plaintiff's contracts of carriage, as evidenced by his itinerary, provided for transportation originating in Singapore and terminating in Hong Kong with intermediate

---

[3] Courts interpreting the Montreal Convention "routinely rely" on existing case law interpreting similar Warsaw Convention provisions.  *See  Baah v. Virgin Atlantic Airways Ltd.*, 473 F. Supp. 2d 591, 595-96  (S.D.N.Y. 2007).

stops in Catania, Italy and Istanbul, Turkey.  *See* Passeri Decl., Ex. G (RFP), No. 2 (attaching

itinerary); *see also Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir.

1995) (contract of transportation evidenced by passenger ticket).  Accordingly, his transportation

constituted "international carriage" within the meaning of Article 1(2) of the Montreal

Convention because the destination, Hong Kong, is situated within the territory of a State Party

to the Montreal Convention—China—and there were agreed stopping points in other

territories—Singapore, Turkey, and Italy.[4]

Chapter III of the Montreal Convention sets forth the only causes of action that a

passenger may bring against a carrier, including death or injury of passengers (Art. 17), damage

to cargo (Art. 18), and delay (Art. 19).  Article 19, which applies here, provides that:

> The carrier is liable for damage occasioned by delay in the carriage by air of
> passengers, baggage or cargo.  Nevertheless, the carrier shall not be liable for
> damage occasioned by delay if it proves that it and its servants and agents took
> all measures that could reasonably be required to avoid the damage or that it was
> impossible for it or them to take such measures.

MC, Art. 19.[5]  Here, Plaintiff asserts two state-law causes of action against THY—negligent

infliction of emotional distress and nuisance—arising from THY's alleged cancellation of

Plaintiff and his family's reservations.  *See* Passeri Decl., Ex. A (Compl.).  Plaintiff claims severe

anxiety, emotional distress, and the possibility of substantial economic loss as a result of "not

being able to return to Hong Kong in time to oversee production of Robogirls" as scheduled.  *Id.*,

Ex. A, ¶¶ 21, 26.  Plaintiff further claims that THY "did not offer a remedy for the situation for

an unreasonable period of time."  *Id.*, Ex. A, ¶ 25.

---

[4] China, Singapore, Italy, and Turkey are all State Parties to the Montreal Convention.  *See* International Civil
Aviation Organization, Legal Affairs and External Bureau, *Treaty Collection,* at
http://www.icao.int/icao/en/leb/mtl99.pdf (identifying parties and noting that China has ratified treaty on behalf of
Hong Kong).

[5] In addition, Articles 19 and 20 set forth the carrier's defenses to any claims, and Article 22 outlines the limitation
of damages.

11

Plaintiff's claims based upon THY's alleged cancellation of his flight and his fear of being delayed are governed by the Montreal Convention. *See, e.g., Paradis v. Ghana Airways*, 348 F. Supp. 2d 106, 112 (S.D.N.Y. 2004) (plaintiff's state law claims for "fear of being stranded" arising from carrier's cancellation of his flight were preempted by the Montreal or Warsaw Convention); *Minhas v. Biman Bangladesh Airlines,* No. 97-cv-4920, 1999 WL 447445 (S.D.N.Y. June 30, 1999) (Convention governed passengers' claims when she was bumped from her return flight from India to New York); *Alam v. Pakistan Int'l Airlines Corp*., No. 92-cv-4356, 1995 WL 17201349 (S.D.N.Y. July 27, 1995) (plaintiff's claim for damages arising when plaintiffs' reservations were unexpectedly canceled and airline refused to endorse ticket to another airline governed by Article 19); *Sassouni v. Olympic Airways,* 769 F. Supp. 537, 538 (S.D.N.Y. 1991) (passenger's claims were governed by the Warsaw Convention when she was bumped from a flight and forced to take a substitute flight). Therefore, the claims are preempted as discussed below.

### B.   The Montreal Convention Provides The Exclusive Cause Of Action And Completely Preempts Plaintiff's Claims

Article 19 of the Montreal Convention provides the exclusive cause of action for Plaintiff's claim against THY. The concept of exclusivity was crystallized by the Montreal Convention. The plain text of the Montreal Convention unambiguously provides the sole and exclusive cause of action for claims arising during international transportation. Article 29 makes explicit that:

> In the carriage of passengers, baggage and cargo, **any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention** without prejudice to the question as to who are the persons who have the right to bring the suit and what are their respective rights. In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable.

MC, Art. 29 (emphasis added).  The Convention precludes a passenger from maintaining a claim under local when such claim "arises out of international transportation."  *El Al Israel, Ltd.*, 525 U.S. at 176 (interpreting the Warsaw Convention).  As the Supreme Court made clear, recovery "**if not allowed under the Convention, is not available at all**."  *Id.* at 161 (internal citations omitted)(emphasis added).

The Second Circuit broadly echoed the exclusive-nature of the Convention[6] and foreclosed the possibility of an action under state law.  *See King v. Am. Airlines*, 284 F.3d 353, 356-7 (2d Cir. 2002) (applying *Tseng* to preclude an action for damages under local law and referencing the exclusivity of the Warsaw Convention).  District courts within the Second Circuit have come to the same conclusions.  *See, e.g., Ginsberg v. Am. Airlines,*  No. 09-cv-3226, 2010 WL 3958843 (S.D.N.Y. Sept. 27, 2010) ("Like the Warsaw Convention, the Montreal Convention has been construed as having a complete preemptive effect over all claims within its scope"); *Olaya v. Am. Airlines, Inc.,* No. 08-cv-4853, 2009 WL 3242116, at *1 (E.D.N.Y. Oct. 6, 2009); *Singh,* 426 F. Supp. 2d at 405 ("[I]t is plain that the [Warsaw] Convention completely preempts those claims which fall within its scope."); *Paradis*, 348 F. Supp. at 113 (finding Convention applies the "exclusive" remedy for plaintiff's claims of delay).

Accordingly, the Montreal Convention exclusively governs all claims in this action and any claims against THY are subject to its terms and conditions.

---

[6]  Many courts pre-*Tseng* recognized the exclusivity of the Convention.  *See e.g., Fishman v. Delta Air Lines*, 132 F.3d 138, 141 (2d Cir. 1998); *Potter v. Delta Air Lines, Inc.*, 98 F. 3d 881, 884-87 (5th Cir. 1996); *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1278 (2d Cir. 1991), *cert. denied*, 502 U.S. 920 (1991).

**C.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Action Under Article 33 Of The Montreal Convention**

Article 33 of the Montreal Convention is one of the conditions that must be satisfied in order to bring an action against the air carrier.  It mandates that an action for damages related to injury or death ***must be brought in one of five specified places*** and provides as follows:

> 1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

> 2. In respect of damages resulting from death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.[7]

MC, Art. 33 (1), (2).  Notably, Article 33(2) of the Montreal Convention added a "fifth" jurisdiction, *i.e.*, a passenger's "principal and permanent residence," to the forums provided under its predecessor, Article 28 of the Warsaw Convention.[8]

Where, as here, the United States is not one of the locations identified in Article 33 of the Montreal Convention, then the Court must dismiss the case for lack of subject matter jurisdiction.  *See Sopcak*, 52 F.3d at 819 (affirming dismissal for lack of subject matter jurisdiction under WC Article 28); *Javier*, 2010 WL 1689861, at *2 (if there is no Article 33

---

[7] THY does not dispute that it operates passenger flights to and from the U.S.

[8] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in* note following 49 U.S.C.A. § 40105 (1997). Article 28 identifies the same four forums as those set out in Article 33(1). Accordingly, courts continue to rely on cases interpreting Article 28 of the Warsaw Convention when deciding whether there is Article 33 jurisdiction. *See Baah*, 473 F. Supp. 2d at 595-96; *Kruger v. United Airlines, Inc.*, No. 06-cv-4907, 2007 WL 3232443, at *3 (N.D. Cal. Nov. 1, 2007) (courts interpreting the Montreal Convention "routinely rely" on existing case law interpreting similar Warsaw Convention provisions). However, the "fifth jurisdiction" – the passenger's "principal and permanent residence"— that appears in Montreal Convention Article 33(2) is a new concept.

jurisdiction under the MC, the court must dismiss for lack of subject matter jurisdiction); *Baah*, 473 F. Supp. 2d at 594 (no Article 33 jurisdiction under the MC); *Osborne v. British Airways PLC Corp.*, 198 F. Supp. 2d 901, 905 (S.D. Tex. 2002) (subject matter jurisdiction lacking where WC Article 28 requirements are not met); *Lee v. China Airlines, Ltd.*, 669 F. Supp. 979, 981 (C.D. Cal. 1987) (dismissing plaintiffs' claims under WC Article 28 where the carrier's domicile and principal place of business were in Taiwan, the plaintiffs' tickets were purchased in Hong Kong, and the destination was Hong Kong).

### 1.    THY's Domicile And Principal Place Of Business Are In Turkey

The "domicile" of an air carrier within the meaning of the Montreal Convention or its predecessor the Warsaw Convention is its place of incorporation, and an air carrier can have only one domicile even if it has subsidiaries or branches in other countries.  *See Pflug v. Egyptair Corp.*, 961 F.2d 26, 28 (2d Cir. 1992) (upholding the district court's finding that, "for purposes of the Convention, an airline has only one domicile"); *Wyler v. Korean Air Lines Co.*, 928 F.2d 1167, 1175 (D.C. Cir. 1991) (courts routinely assume that Article 28 domicile "means the carrier's place of incorporation"); *Osborne*, 198 F. Supp. 2d at 905 ("an air carrier's place of incorporation constitutes its sole domicile for purposes of Article 28(1)").  THY is a corporation duly organized and existing under the laws of Turkey.  *See* Ocal Decl., ¶ 3.  In addition to being domiciled in Turkey, THY maintains its principal place of business and headquarters in Istanbul, Turkey.  *Id.*  Accordingly, the first two Montreal Convention Article 33 fora are located in Turkey, not the United States.

### 2.    The Contract Of Carriage Was Made Outside The United States

In the transportation of passengers, the contract of transportation is evidenced by the passenger's ticket.  For the purposes of the Montreal Convention, the carrier's "place of business

through which the contract has been made" generally is the location where the passenger ticket was purchased. *See Osborne,* 198 F. Supp. 2d at 905; *Lee,* 669 F. Supp. at 981. Here, according to Plaintiff, his contract of carriage was purchased outside the United States, in Hong Kong, with changes to the contract made in Catania, Italy. *See* Passeri Decl., Ex. E (RFA), Nos. 3 and 4. Accordingly, the third forum is not located in the United States.

### 3.   Plaintiff's Destinations Was Outside The United States

With respect to destination under Article 33, it is the "ultimate destination listed in the contract for carriage that controls." *Gayada v. LOT Polish Airlines*, 702 F.2d 424, 425 (2d Cir. 1983). When a "passenger has purchased a round trip ticket, the *destination* is the place where the trip began." *Lee,* 669 F. Supp. at 981 (citations omitted) (emphasis in original); *see Klos v. Polskie Linie Lotnicze,* 133 F.3d 164, 167-68 (2d Cir. 1997) (destination of roundtrip ticket is the return city). For a one-way ticket, the ultimate destination is the location where the carriage ends. *See In re Air Crash Disaster at Malaga, Spain on Sept. 13, 1982*, 577 F. Supp. 1013, 1014 (E.D.N.Y. Jan. 30, 1984). Stopovers in other countries are immaterial. *See, e.g., Gayada*, 702 F.2d at 425 (finding stopover in United States immaterial to subject matter inquiry under the Warsaw Convention). Here, Plaintiff's contract of carriage provided for transportation originating in Singapore (SIN) and terminating in Hong Kong (HKG), with agreed stops in Catania, Italy (CTA) and Istanbul, Turkey (IST). *See* Passeri Decl., Ex. G (RFP), No. 2 (attaching plaintiff's travel itinerary). Accordingly, for the purposes of Article 33, the destination of Plaintiff's travel was Hong Kong—not the United States.

### 4.   Plaintiff's  Principal And Permanent Residence Was In Hong Kong At The Time Of The Incident

Article 33(3)(b) defines "principal and permanent residence" as "the *one* fixed and permanent abode of the passenger *at the time of the accident*." MC, Art. 33(3)(b) (emphasis

added).  A passenger can only have only one "principal and permanent residence," which, by definition, requires a high degree of permanency.  Plaintiff admits that he is a citizen of Germany and a principal and permanent resident of Hong Kong.  *See* Passeri Decl., Ex. E (RFA), Nos. 1 and 2.  Plaintiff is not a citizen or a principal and permanent resident of the United States.  Accordingly, Plaintiff's principal and permanent residence under Article 33 is Hong Kong and the fifth possible forum, therefore, is not in the United States.

Accordingly, none of the five possible Montreal Convention Article 33 fora are in the United States and, therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims.

**D.      Even If Subject Matter Jurisdiction Is Proper In The United States, Plaintiff Cannot Maintain An Action Under Article 19 Of The Montreal Convention**

Assuming arguendo that personal jurisdiction is proper in New York and treaty jurisdiction is proper in the United States—Plaintiff cannot prove that THY is liable under Article 19 of the Montreal Convention.   Under Article 19 a carrier "is liable for damage occasioned by the delay in the carriage by air of passengers, baggage, or cargo."  MC, Art. 19; *see also Paradis*, 348 F. Supp. 2d at 112  (plaintiff's state law claims for "fear of being stranded" arising from carrier's cancellation of his flight were preempted by the Montreal or Warsaw Convention).  The Montreal Convention precludes recovery of emotional injuries or other non-compensatory damages for delay.  *See* MC, Art. 29 ("In any such action, punitive, exemplary or any other non-compensatory damages shall not be recoverable").

Here, Plaintiff claims "acute anxiety, nuisance and emotional distress, as any delay in his return ***would have*** resulted in tremendous economic loss".  *See* Passeri Decl., Ex. A (Comp.), ¶ 17 (emphasis added).  First, Plaintiff suffered no economic damages under the Convention because he ***ultimately traveled as scheduled***.  *See id.*, Ex. E (RFA), No. 5.  Plaintiff admits that he had no economic loss as a result of the delay.  *See id.*, Ex. G (RFP), No. 11.  The only out-of-

pocket expenses Plaintiff claims are his attorneys' fees (*see id*.), which are not recoverable under the Montreal Convention or under New York law. *See Muoneke v. Compagnie Nationale Air France*, 330 Fed. Appx. 457, 462 (5th Cir. 2009) (finding the Montreal Convention does not "provide an independent basis on which [attorneys' fees] may be awarded").

Second, any purely emotional injury—i.e., "acute anxiety, restlessness and nervousness"—claimed by Plaintiff is barred by the Convention. *See id*., Ex. F (Interrog.), Nos. 10 and 11. The Montreal Convention prohibits claims for emotional injury unless they arise from physical injury. *See Ehrlich*, 360 F.3d at 400 (a carrier may be liable "for mental injuries only if they are caused by bodily injuries"); *Fields v. BWIA Intern. Airways Ltd*., No. 99-cv-2493, 2000 WL 1091129, at * 6 (E.D.N.Y. July 7, 2000) (finding damages for "emotional stress" resulting from Article 19 delay are not recoverable absent physical injury). Here, it is undisputed that the fear of delay did not result in any physical injury to Plaintiff. Accordingly, Plaintiff cannot maintain a claim under Article 19 of the Montreal Convention.

In any event, even if Plaintiff could demonstrate an Article 19 delay, THY would have a complete defense under the terms of its Conditions of Carriage. As noted *supra*, THY allegedly cancelled Plaintiff's newly made reservation because Plaintiff's initial flight reservation was not cancelled by or on behalf of Plaintiff. *See* Ocal Decl., ¶ 6. Plaintiff was marked as a "no show" for his initial reservation, which resulted in the cancellation of any subsequent reservations under THY's Conditions of Carriage. *See id*., ¶¶ 6-7, Ex. A ("if a passenger does not use a reservation and fails to advise Carrier, Carrier may cancel or request cancellation of any onward or return reservation"). In any event, Plaintiff's reservation was ultimately rebooked and Plaintiff and his family traveled on the flight as scheduled. *See* Passeri Decl., Ex. E (RFA), No. 5.

## POINT III
## ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFF WILL BE UNABLE TO RAISE ANY ISSUES OF MATERIAL FACT CONCERNING HIS CLAIMS UNDER NEW YORK LAW

Alternatively, even if jurisdiction was proper in New York and the Montreal Convention did not apply, Plaintiff's claims still require dismissal because as a matter of law he will be unable to meet his burden of proof for both negligent infliction of emotional distress (NIED) and nuisance.[9]

### A.   Plaintiff Will Be Unable To Present Any Evidence Of Negligent Infliction Of Emotional Distress

Plaintiff will be unable to present evidence to satisfy any element of his NIED claim, which requires Plaintiff to prove: (1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct on the part of defendant; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Nieblas-Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016) (internal quotations omitted).

First, Plaintiff cannot show that THY breached a duty owed to Plaintiff.  On August 28, 2016—the same day that he was supposed to return to Hong Kong—Plaintiff allegedly changed his return flight to leave on September 1, 2016.  *See* Passeri Decl., Ex. A, ¶ 10.  That same day, he received an email from Expedia notifying him that THY had cancelled his newly made reservation.  *See id.*, Ex. A, ¶ 11.  The reason for the cancellation of Plaintiff's newly made reservation was that his initial reservation for travel on August 28, 2016 was not actually cancelled by or on behalf of Plaintiff.  *See* Ocal Decl., ¶ 6.  As a result, Plaintiff was listed as a "no show" for his initial reservation, which resulted in the cancellation of any subsequent

---

[9] If New York law governs, THY also has the defense that Plaintiff's claims are preempted by the Airline Deregulation Act (ADA) 49 U.S.C. § 41713(b)(1), insofar as these claims directly interfere with THY's rates, routes, or services.  *See Rombom v. United Air Lines, Inc.,* 867 F. Supp. 214, 221-22 (S.D.N.Y. 1994).

reservations under THY's Conditions of Carriage.  *See id.*, ¶¶ 6-8, Ex. A.  THY acted within its contractual rights in cancelling Plaintiff's reservation.  In any event, Plaintiff's reservation was ultimately rebooked and he traveled as scheduled.  *See* Passeri Decl., Ex. E (RFA), No. 5.

Even if Plaintiff could show a breach of duty, which he cannot, Plaintiff will not be able to prove that he feared for his physical safety—an essential component of NIED.  *See Nicholson v. A. Anastasio & Sons Trucking Co.*, 77 A.D.3d 1330, 1331, 909 N.Y.S.2d 244, 245 (4th Dep't 2010) ("To recover damages for negligent infliction of emotional distress… plaintiffs must establish that, *inter alia*, defendants' negligence unreasonably endangered the physical safety of plaintiffs or caused them to fear for their safety.");  *Davies v. Cty. of Nassau*, 260 A.D.2d 531, 531, 688 N.Y.S.2d 238, 239 (2d Dep't 1999) (same).  Plaintiff alleges that he "suffered severe anxiety and emotional distress, when faced with the possibility of substantial *economic loss*" if unable to oversee production of RoboGirls—but he does not mention, let alone be able to prove, fear for his physical safety, as required.  *See* Passeri Decl., Ex. A (Compl.), ¶ 21.

Additionally, Plaintiff cannot prove that THY engaged in extreme or outrageous conduct— *i.e.*, conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as *atrocious, and utterly intolerable in a civilized community*."  *Gate Techs., LLC v. Delphix Capital Markets*, LLC, No. 12-cv-7075, 2013 WL 3455484, at *9 (S.D.N.Y. July 9, 2013) (emphasis added) (internal citation and quotations omitted);  *see also In Manchanda v. Google*, No. 16-cv-3350, 2016 WL 6806250, at *6–7 (S.D.N.Y. Nov. 16, 2016) ("And while the elements of negligent infliction of emotional distress differ from those required for the intentional tort, both require the same showing of outrageousness.").  Rather, as discussed above, THY acted in accordance with its rights in its Conditions of Carriage.

Moreover, nothing in the Complaint, or responses to discovery, suggests that Plaintiff's alleged emotional injury flowed naturally from THY's conduct.  *See Howard v. Lecher*, 42 N.Y.2d 109, 111, 366 N.E.2d 64, 65 (1977) (an alleged injury must "flow as a natural consequence of the wrongful act").  To the contrary, Plaintiff and his family were able to travel home as scheduled, enabling Plaintiff to attend work and avoid economic loss.  Any allegation that Plaintiff suffered anxiety for approximately one month thereafter is unsubstantiated. Likewise, any allegation that Plaintiff suffered severe emotional distress is also unsubstantiated and cannot be proven given the very high bar that exists in  New York courts.  *See Nieblas-Love*, 165 F. Supp. 3d at 77 (recognizing longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical injury); *see also Johnson v. State*, 37 N.Y.2d 378, 382, 334 N.E.2d 590, 592 (1975) (recognizing NIED claim where a woman was misinformed by a hospital that her mother died); *see also Baker v. Dorfman,* 239 F.3d 415 (2d Cir. 2000) (holding the New York Court of Appeals would likely find an actionable NIED claim where plaintiff received a false-positive HIV test).

In short, even if THY breach a duty owed to Plaintiff (which it did not), Plaintiff's alleged harm is nothing more than the common frustration with international travel, which does not rise to the level of NIED.  Therefore, summary judgment should be granted to THY dismissing Plaintiff's claim for NIED as a matter of law.

### B.    Plaintiff's Complaint Misapplies The Nuisance Doctrine And Plaintiff Cannot Present Any Evidence Of Nuisance

Plaintiff's claim for nuisance also fails because his Complaint completely misapplies the nuisance doctrine.  Nuisance occurs in two circumstances: (1) where a defendant causes substantial interference with a person's right to use and enjoy land (private nuisance) or (2)

where a defendant interferes with a public right (public nuisance).  *See Chase Manhattan Bank, N.A. v. T & N plc*, 905 F. Supp. 107, 125 (S.D.N.Y. 1995) (distinguishing the two types of nuisance cognizable under New York law).   Plaintiff alleges that THY substantially interfered with his "vacation and time with his family" by failing to resolve the cancellation issue quickly enough.  *See* Passeri Decl., Ex. A (Compl.), ¶ 24.  Even if true, Plaintiff cannot prove a claim for private or public nuisance against THY.

### 1.    *Plaintiff Cannot Prove Private Nuisance*

Plaintiff cannot prove private nuisance because he will not be able to present any evidence that THY interfered with his right to use and enjoy land, an essential element required by New York law.  *See Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 540 (S.D.N.Y. 2007) ("A private nuisance threatens one person or a relatively few, an essential feature being an interference with the use or enjoyment of land.") (internal citations and quotations omitted).   A claim for private nuisance under these facts is simply inapplicable because Plaintiff cannot show any interference with the use or enjoyment of property.  *See Molander v. Pepperidge Lake Homeowners Ass'n*, 82 A.D.3d 1180, 1184 (2d Dep't 2011) (Plaintiffs could not state claim for nuisance where they, and not defendants, were allegedly required to install a sprinkler system, because defendants' lack of a sprinkler system did not interfere with plaintiffs' use and enjoyment of own land).[10]  Plaintiff's Complaint inaccurately construes private nuisance as a cause of action that provides a remedy for general annoyance.  This is simply not the law.

---

[10] Private nuisance traditionally arises when an intangible irritant, such as noise, odor, light, or vibration intrudes upon the property of another. *See Abbatiello,* 522 F. Supp. 2d at 540 (hazardous polychlorinated biphenyls (PCB) allegedly entered Plaintiffs' land); *Nalley v. Gen. Elec. Co.*, 630 N.Y.S.2d 452, 458 (Sup. Ct., Rensselaer Cnty. 1995) (noxious odors allegedly permeated air over and around plaintiffs' properties); *LaJoy v. Luck Bros.*, 34 A.D.3d 1015, 1015, 826 N.Y.S.2d 759, 760 (3d Dep't 2006) (Plaintiff's health and property allegedly affected by noise and vibration from nearby construction site).

### 2. *Plaintiff Cannot Prove Public Nuisance*

Additionally, Plaintiff will be unable to present any evidence that THY committed a public nuisance.  Under New York law, a public nuisance:

> [C]onsists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons.

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 362 N.E.2d 968, 971 (1977) (internal citation omitted).  Again, there is simply no evidence, nor could there be, that THY's conduct interfered with a right common to the public.  Plaintiff's alleged harm derives from an alleged cancellation of his reservation and his fear of delay.   A claim for public nuisance simply is inapplicable to these facts.  *See, e.g., Williams v. Dow Chem. Co.,* No. 01-cv-4307, 2004 WL 1348932, at *20 (S.D.N.Y. June 16, 2004) (finding a public nuisance claim involves rights common to the public at large, it cannot be maintained by a private individual).

**CONCLUSION**

WHEREFORE, Defendant Turk Hava Yollari Anonim Ortakligi respectfully requests that this Court enter summary judgment in its favor dismissing Plaintiff's Complaint in its entirety.

Dated: New York, New York
        June 5, 2017

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
        Alan D. Reitzfeld
        Sarah G. Passeri
31 West 52nd Street
New York, New York  10019
Tel.:    (212) 513-3200
Fax:    (212) 385-9010
alan.reitzfeld@hklaw.com
sarah.passeri@hklaw.com

*Attorneys for Defendant*
*Turk Hava Yollari A.O.*

24