UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GLEISSNER,

Plaintiff,

v.

TURK HAVA YOLLARI ANONIM
ORTAKLIGI,

Defendant.

Civil Action No.: 16-cv-8287 (JPO)

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

**Roman A. Popov, Esq.**
MORTON & ASSOCIATES LLP
246 West Broadway
New York, NY 10013
Tel: (212) 796-4309
Fax: (212) 656-1828
rp@moas.com


*Attorneys for Plaintiff
Michael Gleissner*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.  Standard On A Motion For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.  This Court Has Personal Jurisdiction Over Defendant . . . . . . . . . . . . . . . . . . . . . 4

          A.      There Is General Jurisdiction Over THY Pursuant to CPLR § 301 . . . . 4

                1. There Is Personal Jurisdiction Over THY Because
                Its New York Agent Is Subject To General Jurisdiction . . . . . . . . . . . . 4

                2. There Is General Jurisdiction Over THY Under the
                "Solicitation Plus" Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          B.      There Is Specific Jurisdiction Over THY Pursuant to
                CPLR § 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          C.      Exercising Jurisdiction Over THY Comports With Due Process . . . . . 11

                1. Minimum Contacts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2. Reasonableness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.  The Montreal Convention Neither Applies Nor Preempts
        Plaintiff's State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          A.      Removal Was Improper And This Matter Must Be Remanded . . . . . . 14

          B.      Plaintiff's State Law Claims Are Not Preempted . . . . . . . . . . . . . . . . 16

          C.      Plaintiff Is Not Bound By Article 33's Forum Limitations . . . . . . . . . . 19

    IV.  Summary Judgment Is Inappropriate At This Juncture . . . . . . . . . . . . . . . . . . . . 20

          A.      Whether Or Not Plaintiff Suffered Emotional Distress
                As A Result of THY's Negligence Is A Question For The Jury . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144, 157 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Allinger v. City of Utica,*
    641 N.Y.S.2d 959 (4th Dep't 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Alpha International, Inc. v. T-Reproductions, Inc.,*
    2003 WL 21511957, at *5 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 255 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Baker v. Dorfman,*
    239 F.3d 415, 421 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Beacon Enters., Inc. v. Menzies,*
    715 F.2d 757, 763 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239, 251 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bulova Watch Co. v. K. Hattori & Co.,*
    508 F.Supp. 1322, 1334 (E.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 474-75 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chambers v. TRM Copy Ctrs. Corp.,*
    43 F.3d 29, 37 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Chloe v. Queen Bee of Beverly Hills, LLC,*
    616 F.3d 158 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Chong v. Healthtronics, Inc.,*
    2007 WL 1836831, at *10 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cicalo v. Harrah's Operating Co., Inc.,*
    2008 WL 1847665, at *4 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Curley v. American Airlines, Inc.,*
    846 F.Supp. 280, 284 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Delagi v. Volkswagenwerk AG.,*
    29 N.Y.2d 426, 431-32 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dogan v. Harbert Const. Corp.*,
    507 F.Supp. 254, 258 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Donkor v. British Airways Corp.*,
    62 F.Supp.2d 963, 969 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dorfman v. Marriott Int'l Hotels, Inc.*,
    2002 WL 14363, at *12 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ehrlich v. Am. Airlines, Inc.*,
    360 F.3d 366, 371 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*El Al Israel Airlines, Ltd. v. Tseng*,
    525 U.S. 155, 171 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Franzon v. Massena Memorial Hosp.*,
    977 F.Supp. 160, 168 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Frummer v. Hilton Hotels International, Inc.*,
    19 N.Y.2d 533, 537 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Garcia v. Lawrence Hosp.*,
    5 A.D.3d 227, 228 (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Halio v. Lurie*,
    15 A.D.2d 62, 65 (2d Dep't 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hsin Ten Enterprise USA, Inc. v. Clark Entreprises*,
    138 F.Supp.2d 449, 456 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*In re Nigeria Charter Flights Contract Litigation*,
    520 F.Supp.2d 447, 455 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*
    326 U.S. 310, 316 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*James v. Saltsman*,
    99 A.D.2d 797 (2d Dep't 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Jensen v. L.C. Whitford Co.*,
    167 A.D.2d 826, 827 (4th Dep't 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kamanou-Goune v. Swiss Int'l Airlines*,
    2009 WL 874600, at *4 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Kennedy v. McKesson Co.*,
    58 N.Y.2d 500 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Koehler v. Bank of Bermuda Ltd.,*
      101 F.3d 863, 865 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Krzesaj v. New York City Department of Education,*
      2017 WL 1031276, at *13 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Landmark Land Co. v. Sprague,*
      701 F.2d 1065 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,*
      918 F.2d 1039, 1043 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 8

*Lewis v. Madej,*
      2015 WL 6442255, *7 (S.D.N.Y 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Licci ex Licci v. Lebanese Canadian Bank,*
      732 F.3d 161, 168 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Long Island Lighting Co. v. Barbash,*
      779 F.2d 793, 795 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mahaney v. Air France,*
      474 F.Supp. 532, 535 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Malik v. Butta,*
      1993 WL 410168, at *3 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Martell v. St. Charles Hospital,*
      523 N.Y.S.2d 342 (Sup. Ct. Suffolk Co. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*McGowan v. Smith,*
      52 N.Y.2d 268 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
      84 F.3d 560, 568 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pflug v. Egyptair Corp.,*
      961 F.2d 26, 28 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19, 20

*Pittman v. Grayson,*
      869 F.Supp. 1065, 1072-73 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rescuecom Corp. v. Hyams,*
      477 F.Supp.2d 522, 529 (N.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.,*
      657 F.Supp. 1040, 1050 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Schlesinger Investment Partnership v. Fluor Corp.,*
    671 F.2d 739 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Schwapp v. Town of Avon,*
    118 F.3d 106, 110 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sedigh v. Delta Airlines, Inc.,*
    850 F.Supp. 197, 200 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shen v. Japan Airlines,*
    1994 WL 167989, at *2 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.,*
    702 F.Supp.2d 122, 134 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sunlight Solutions, LLC v. Birnbaum,*
    2008 WL 724215, at *1-5 (W.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Thomas Publishing Co. v. Indus. Quick Search, Inc.,*
    237 F.Supp. 2d 489, 492 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Walker v. Eastern Air Lines, Inc.,*
    785 F.Supp. 1168, 1170 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Weiss v. El Al Israel Airlines, Ltd.,*
    433 F.Supp.2d 361, 365 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88, 92 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11-13

## STATUTES AND OTHER AUTHORITIES

N.Y. C.P.L.R. § 301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 12

N.Y. C.P.L.R. § 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

Convention for the Unification of Certain Rules for International Carriage by Air,
done at Montreal on May 28, 1999, ICAO Doc. No. 9740 (entered into force
on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106–45,
1999 WL 33292734 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## PRELIMINARY STATEMENT

Defendant Turk Hava Yollari Anonim Ortakligi ("THY"), brings its Motion for Summary Judgment and claims that (1) this Court lacks personal jurisdiction over THY, (2) that the Montreal Convention governs and preempts Plaintiff's state-law claims, thereby necessitating dismissal and (3) that Plaintiff will be unable to raise any issues of material fact concerning his state-law claims, making summary judgment appropriate at this juncture. As discussed in further detail below, all of Defendant's arguments are unavailing and accordingly, the motion must be denied in its entirety.

## PROCEDURAL HISTORY

At the outset, Plaintiff would be remiss not to elaborate on its letter, dated June 16, 2017 (Dkt. No. 22), and provide the Court with an explanation regarding its failure to propound discovery requests upon Defendant, during the discovery period.

On December 7, 2016, during the Initial Pretrial Conference, the Court raised objections regarding its subject matter jurisdiction over the instant action. THY was ordered to submit a letter motion illustrating that subject matter jurisdiction exists because the Montreal Convention applies to the causes of action as pled (Dkt. No. 14). Defendant submitted its letter motion on December 21, 2016 (Dkt. No. 15), and Plaintiff's counsel had innocuously, and in good faith, believed that the proceedings were stayed pending the Court's determination as to whether or not subject matter jurisdiction did indeed exist. That is the reason why Plaintiff did not serve its Fed. R. Civ. P. 26 Initial Disclosures, nor any discovery requests upon Defendant during the discovery period, although it should be noted that Plaintiff timely complied with all of its other discovery obligations in response to Defendant's requests. Plaintiff's counsel was under

the impression that if Defendant's letter motion, dated December 21, 2016, was denied and the case was remanded to State Court, a new discovery schedule would be agreed upon.

The first time that Plaintiff's counsel realized that the Court would not be issuing its decision on whether or not subject matter jurisdiction exists in response to Defendant's December 21, 2016 letter motion, was when the Court denied Plaintiff's letter motion request for an extension of time to file an opposition to Defendant's Motion for Summary Judgment, on June 20, 2017 (Dkt. No. 24). This decision was rendered approximately a month after discovery had already closed and Plaintiff was thus unable to obtain from Defendant any facts or information that it could have used to support its claims. Because Plaintiff has not acted in bad faith in its failure to take discovery, combined with the extreme prejudice it would suffer should it not be permitted to obtain facts and information exclusively in Defendant's custody and control that is relevant to its rights and claims, Plaintiff respectfully requests that the Court briefly re-open the discovery period permit it to serve discovery requests upon THY.

Even if the Court does not permit Plaintiff to conduct any discovery, whether or not it is limited in scope, Plaintiff has raised genuine issues of material fact, as outlined in further detail below, to render summary judgment relief inappropriate at this juncture.

## ARGUMENT

## I.      STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c), summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  On a motion for summary

judgment, the burden of demonstrating that no genuine factual dispute exists rests upon

the moving party.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Schwapp v.*

*Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("[T]he court resolves all ambiguities

and draws all reasonable inferences against the moving party").

Put most simply, "the evidence of the non-movant is to be believed," *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and if there is "any evidence on the record

from any source from which a reasonable inference could be drawn in favor of the non-

moving party, summary judgment is improper" *Chambers v. TRM Copy Ctrs. Corp.,* 43

F.3d 29, 37 (2d Cir. 1994).

Cognizant of the fact that failure to propound discovery upon THY was a result of

its own misunderstanding of judicial instructions, Plaintiff nevertheless submits that

summary judgment must be disfavored at this juncture because the party against which it

is sought has not completed discovery and when such discovery may yield information

relevant to the motion.  *See Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d

Cir. 1985); *see also Schlesinger Investment Partnership v. Fluor Corp.,* 671 F.2d 739 (2d

Cir. 1982) (reversing grant of summary judgment where discovery incomplete); *and see*

*Landmark Land Co. v. Sprague*, 701 F.2d 1065 (2d Cir. 1983) (same).  It is more than

plausible that there exist facts and information exclusively under THY's custody and

control, that are relevant to Plaintiff's rights and claims, that will never come to light

absent meaningful discovery in this matter.  Consequently, because Plaintiff has not been

able to propound its discovery requests upon THY, the granting of summary judgment is

premature.  *See Franzon v. Massena Memorial Hosp.*, 977 F.Supp. 160, 168 (N.D.N.Y.

1997) ("Because summary judgment is a drastic device, it should not be granted where one party has yet to exercise its opportunities for pre-trial discovery).

## II.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

### A.     There Is General Jurisdiction Over THY Pursuant to CPLR § 301

A court may exercise general personal jurisdiction over a Defendant, pursuant to CPLR § 301, where that Defendant is "doing business" in New York, "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991). Traditional indicators of "doing business" in New York may include (1) an office in New York, (2) solicitation of business in New York, (3) presence of bank accounts or (4) property in New York, and/or (5) employees or agents in New York. *Id.* Even without the benefit of discovery, Plaintiff is able to show that under the facts at hand, THY is authorized to do business in New York, has an office in New York, has property in New York and has employees and agents in New York. *See* ¶ 2 Declaration of Roman A. Popov ("Popov Decl.") and ¶ 1 Declaration of Cenk Ocal ("Ocal Decl.") (Dkt. No. 19).

### 1.     There Is Personal Jurisdiction Over THY Because Its New York Agent Is Subject To General Jurisdiction

Furthermore, THY's agent, Turkish Airlines, Inc. ("Turkish Airlines"), by virtue of being a domestic corporation, presumably satisfies *all* of the *Landoil* "doing business" factors. At the very least, the facts show that Turkish Airlines is incorporated in New York, maintains a principal place of business and has property in Manhattan, as well as permanent, full-time employees. *See* ¶ 3 Popov Decl. Considering the foregoing, it is reasonable to infer that discovery would divulge that Turkish Airlines also solicits business and has bank accounts in New York.

As discussed above, a foreign corporation is subject to general personal jurisdiction in New York if it is doing business in New York with a fair measure of permanence and continuity. *Id.* Case law from the Court of Appeals illustrates that the systematic activities of a subsidiary or agent in New York may result in a finding that the foreign principal is "doing business" in New York and thus subject to general personal jurisdiction. *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 537 (1967). Notably, if the foreign corporation is found to be present and doing business in New York due to the activities of its subsidiary or agent, it may be sued on any cause of action, regardless of whether or not it is related to the subsidiary's or agent's activities. *See, e.g., Dogan v. Harbert Const. Corp.*, 507 F.Supp. 254, 258 (S.D.N.Y. 1980).

Courts have articulated two tests to determine when a subsidiary's contacts confer personal jurisdiction over the foreign company: (i) if the relationship between the foreign and domestic corporation gives rise to a "valid inference" of an agency relationship or (ii) if control by the foreign corporation over the domestic subsidiary is so complete that the latter is, in fact, merely a department of the former. *Delagi v. Volkswagenwerk AG.*, 29 N.Y.2d 426, 431-32 (1972); *see also Bulova Watch Co. v. K. Hattori & Co.,* 508 F.Supp. 1322, 1334 (E.D.N.Y. 1981); *and see Koehler v. Bank of Bermuda Ltd.,* 101 F.3d 863, 865 (2d Cir. 1996) (foreign parent liable when the subsidiary is acting as an agent for the parent, or when the parent's control is so complete that the subsidiary is a mere department of the parent). Both tests "require a fact-specific inquiry into the realities of the actual relationship between the parent and the subsidiary" *Id.* It is for this reason that Plaintiff respectfully requests the Court to at least allow him to conduct limited

jurisdictional discovery in this matter to elucidate THY's relationship with Turkish Airlines, as well as its intrastate conduct and contacts with New York.

2.     **There Is General Jurisdiction Over THY Under the "Solicitation Plus" Rule**

Even without showing any of the "doing business" traditional factors propounded by the *Landoil* Court, an out of state defendant may be subject to general personal jurisdiction under the "Solicitation Plus" rule, where the solicitation of business is "substantial and continuous" and the defendant engages in activities of substance in New York. *Landoil*, 918 F.2d at 1043-44; *see also Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983). A finding of solicitation, however, "does not necessarily require solicitation in the sense of an offer of contract. Rather, the central question is whether Defendant (or its agent) behaved in such a way so as to encourage others to spend money (or otherwise act) in a manner that would benefit Defendant" *Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 92 (2d Cir. 2000). Under the "Solicitation Plus" rule, "once solicitation is found in any substantial degree, very little more is necessary to a conclusion of doing business" *Landoil*, 918 F.2d at 1044.

THY maintains an interactive website (www.turkishairlines.com), accessible from within New York, through which it not only promotes and solicits New York customers, but, as can reasonably be assumed without discovery, actually conducts business and enters into contracts with those same New York customers. *See* ¶ ¶ 3 and 4 Popov Decl. Upon visiting www.turkishairlines.com, customers are able to purchase tickets to both land in and depart from New York's John F. Kennedy airport, book hotel reservations in New York, as well as rent cars in New York. *Id.* The Second Circuit has held that maintaining such interactive websites, as opposed to merely passive websites, weighs in

factor of finding personal jurisdiction. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 251 (2d Cir. 2007) ("interactive web sites where a user can exchange information with the host computer" considered to be factor in favor of jurisdiction); *see also Thomas Publishing Co. v. Indus. Quick Search, Inc.,* 237 F.Supp. 2d 489, 492 (S.D.N.Y. 2002) (holding that "[i]f Defendant wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [Defendant] to personal jurisdiction in New York. Websites such as www.turkishairlines.com that "permit information exchange between Defendant are viewers are deemed 'interactive', and generally support a finding of personal jurisdiction over Defendant." *Alpha International, Inc. v. T-Reproductions, Inc.*, 2003 WL 21511957, at *5 (S.D.N.Y. 2003); *see also Hsin Ten Enterprise USA, Inc. v. Clark Entreprises,* 138 F.Supp.2d 449, 456 (S.D.N.Y. 2000).

Second Circuit courts generally evaluate a Defendant's web-based activity along a spectrum: "[a]t the lower end of the spectrum are 'passive', websites, which primarily make information available to viewers but do not permit an exchange of information." *Id.* At the other end are situations where the "defendant clearly does business over the Internet, such as where it repeatedly transmits computer files to customers in other states." *Id.* "Occupying the middle ground are 'interactive' websites, which permit the exchange of information between the defendant and website viewers." *Id.* THY's website, which allows users to book flights, hotels and car rentals, should, at minimum, be considered an interactive website.

However, it is also reasonable to propose that, given how the website facilitates commercial transactions, it falls at the very other end of the spectrum, so that THY can be considered to essentially be doing business over the internet. Indeed, how many modern

airline passengers arrive at the airport without a ticket that was purchased through a website? A website that allows New York users to purchase flights departing from and landing in New York, to reserve hotels and automobiles in New York, should most certainly satisfy the "substantial and continuous" solicitation of business in New York promulgated by the *Landoil* court in its interpretation of the Solicitation Plus rule. *Landoil* 918 F.2d at 1043-44.

Of course, the solicitation of business in New York through a highly interactive website, even if substantial, does not alone satisfy second Solicitation Plus prong, which requires that "Defendant engages in other activities of substance in the State. *Id.* at 1043. "[T]he additional activities sufficient to confer jurisdiction under the Solicitation Plus doctrine 'have involved either some financial or commercial dealings in New York … or Defendant holding himself out as operating in New York, either personally or through an agent." *Cicalo v. Harrah's Operating Co., Inc.,* 2008 WL 1847665, at *4 (S.D.N.Y. 2008). In addition to doing business in New York via its highly interactive website, THY is authorized to do business in New York, maintains offices, owns property and has full-time agents and employees in New York. *See* ¶ 2 Popov Decl. and ¶ 1 Ocal Decl. If that is not enough, THY's agent and subsidiary, Turkish Airlines, is incorporated under the laws of New York, maintains its principal place of business in Manhattan and also owns property and has full-time employees in New York. *See* ¶ ¶ 3 and 4 Popov Decl. Ostensibly, THY's and Turkish Airlines' aforementioned activities in New York extend marginally beyond the "substantial solicitation" and "very little more" prongs that Second Circuit courts require in order to exercise general personal jurisdiction over a Defendant pursuant to the Solicitation Plus rule. *Landoil*, 918 F.2d at 1044.

While it is unproblematic for Plaintiff to demonstrate that THY maintains an interactive website that is accessible from New York without the benefit of discovery, it is not far-fetched to posit that a plethora of other methods by which THY and Turkish Airlines both solicit and do business in New York are unknown to Plaintiff at this time and would be unveiled during the discovery process. After all, as discussed above, it is not disputed that both THY and Turkish Airlines are authorized to do business in New York, maintain offices in New York and have full-time employees in New York. *See* ¶ ¶ 3-5 *Popov Decl.* Permitting Plaintiff to conduct limited jurisdictional discovery on the aforementioned issues would not significantly prejudice THY. Conversely, Plaintiff would suffer extreme prejudice by losing its opportunity to engage Defendant in discovery, even if limited in scope, as a result of innocently misinterpreting judicial instructions.

**B.** **There Is Specific Jurisdiction Over THY Pursuant to CPLR § 302(a)(1)**

Even if this Court finds that THY is not subject to CPLR § 301 general jurisdiction, it may still exercise personal jurisdiction over Defendant pursuant to CPLR § 302(a)(1) specific jurisdiction. CPLR § 302(a)(1) states that New York courts may exercise personal jurisdiction over a non-domiciliary Defendant where the Defendant "transacts any business within the state …" The Court of Appeals has stated that to establish jurisdiction under CPLR § 302(a)(1), there must be some "articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268 (1981). In other words, the transaction of business by the foreign Defendant in New York must "bear a substantial relationship to the transaction out of which the instant cause of action arose." *Id.* Accordingly, for personal jurisdiction to lie

in a New York court, pursuant to CPLR § 302(a)(1), the non-domiciliary must have transacted business within New York *and* the cause of action must arise out of such transaction. *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1050 (S.D.N.Y. 1987).

As discussed at length above, THY operates a highly interactive website which allows New York users to book flights, hotels and car rentals in New York. *See* ¶ 4 Popov Decl. Interactive websites with significant commercial elements, such as Defendant's in this instance, are generally found sufficient to constitute in-state transactions of business. *See e.g. Rescuecom Corp. v. Hyams,* 477 F.Supp.2d 522, 529 (N.D.N.Y. 2006); *see also Hsin Ten*, 138 F.Supp.2d at 456 (finding that Defendants transacted business in New York where out-of-state website was highly interactive and enabled New York viewers to purchase products online, download order forms and chat with online representatives); *and see Sunlight Solutions, LLC v. Birnbaum,* 2008 WL 724215, at *1-5 (W.D.N.Y. 2008) (exercising personal jurisdiction based on Defendant's highly interactive website). Thus, by virtue of making the highly interactive website, www.turkishairlines.com, accessible to the New York market, THY has "transacted business within the State" and satisfied the first prong of CPLR § 302(a)(1).

Plaintiff has also satisfied the second requirement of CPLR § 302(a)(1), which requires the cause(s) of action to arise from such transaction. The Second Circuit has made it abundantly clear that the 'arising from' prong of CPLR § 302(a)(1) does not require a causal link between Defendant's New York business activity and Plaintiff's injury. *See Licci ex Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013). Rather, it requires a relatedness between the transaction and the legal claim such that the

latter is not completely unmoored from the former, regardless of the ultimate merits of the claim. *Id.* Certainly, there exists a relatedness between THY's New York transaction, namely, presenting a highly interactive website offering services including, *inter alia*, booking online reservations and Plaintiff's legal claims, which accrued as a result of Defendant cancelling his online reservations. Thus, CPLR § 302(a)(1) is satisfied and an exercise of jurisdiction is appropriate over THY as it transacts business in New York and Plaintiff's claims arise from that transaction.

## C.  Exercising Jurisdiction Over THY Comports With Due Process

After determining that there is a statutory basis for jurisdiction, a court must also analyze whether the exercise of personal jurisdiction over Defendant comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945). To satisfy the *International Shoe* standard, Defendant must have "minimum contacts" with the forum state. *Id.* This standard is met when a non-domiciliary Defendant purposefully avails itself of the privilege of conducting business in the forum state, such that it "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

## 1.  Minimum Contacts

Under the facts at hand, Plaintiff passes the test, of whether exercising personal jurisdiction over the Defendant airline is Constitutionally permissible, with flying colors. THY must be considered to have the requisite minimum contacts with New York for the same reasons that it is subject to general jurisdiction here. *See Wiwa,* 226 F.3d at 97 (same contacts that constituted "a continuous and systematic general business" presence

in New York for purposes of CPLR § 301 also "satisf[ied] the minimum contacts portion of a due process analysis"); *see also Dorfman v. Marriott Int'l Hotels, Inc.*, 2002 WL 14363, at *12 (S.D.N.Y. 2002).

Even if this Court finds that THY is not subject to general jurisdiction, there exist a plethora of minimum contacts between Defendant and New York. As discussed above, THY is authorized to do business in New York, actively solicits and does business in New York through its highly interactive website, has offices, property and full-time employees in New York. Combined with the fact that its agent, Turkish Airlines, is incorporated, present and doing business in New York, any contention that THY does not have the requisite minimum contacts with New York would encounter severe turbulence.

## 2.      Reasonableness

Once a defendant is found to have the requisite minimum contacts, the court must determine whether exercising personal jurisdiction is "reasonable under the particular circumstances of the case" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). With respect to the reasonableness prong of the due process analysis, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010). In evaluating reasonableness, courts look to the following factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the Plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering substantive social policies." *Id.* All applicable *Chloe* factors illustrate that an exercise of jurisdiction over THY would be reasonable under the circumstances.

Regarding the first factor, THY does not even contend that it would be burdened by having to litigate in New York. Even if it did, Plaintiff should not need to travel outside of New York and retain new counsel to seek relief as a result of Defendant's misconduct. *See Lewis v. Madej,* 2015 WL 6442255, *7 (S.D.N.Y 2015) ("Plaintiffs' interest in a New York forum outweighs [Defendant's] burden of litigating here because Plaintiffs, as victims of intentionally tortious conduct, should not have to travel to an inconvenient forum to obtain relief"). Furthermore, THY has already retained a New York firm to represent its interests in the instant proceeding. *See e.g. Wiwa*, 226 F.3d at 99 (finding that exercise of personal jurisdiction would not be unreasonable when, *inter alia*, Defendants had an established relationship with a law firm in New York).

The second *Chloe* factor is satisfied as because THY is authorized to do business in New York, which furthers the contention that exercising jurisdiction here would be reasonable under the circumstances. *See e.g. Chong v. Healthtronics, Inc.,* 2007 WL 1836831, at *10 (E.D.N.Y. 2007) ("A voluntary use of certain state procedures, as in the case where Defendant is authorized to do business in the State … is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process"). New York unequivocally has an interest in ensuring that entities authorized to do business with its borders do so legally.

The third and fourth *Chloe* factors also favor an exercise of personal jurisdiction over THY. Plaintiff ostensibly has an interest in obtaining convenient, effectual and expedient relief in a New York court. As the Second Circuit observed, "New York City is a major world capital which offers central location, easy access, and extensive facilities of all kinds" *Wiwa*, 226 F.3d at 99. Litigating the action in this forum would provide the

most convenient, effectual and expedient relief as there is no language barrier, both parties have already retained New York counsel and partial discovery has taken place. The final *Chloe* factor is equipoise with regard to the reasonableness of this Court maintaining jurisdiction over THY. Accordingly, the due process requirements for this Court's maintenance of personal jurisdiction over Defendant have been established.

## III. THE MONTREAL CONVENTION NEITHER APPLIES NOR PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

### A. Removal Was Improper And This Matter Must Be Remanded

In one swoop overbroad stroke, Defendant attempts to convince this Court that removal was proper because the Montreal Convention ("MC") governs all claims arising out of international transportation. Defendant contends that because Plaintiff's travel involved Singapore, Hong Kong, Italy and Turkey, Article 1(1) of the Montreal Convention, which provides that "[t]his convention shall apply to all international transportation of persons, baggage or goods performed by aircraft for hire," is satisfied. *See* Pgs. 10-11 of Defendant's Memorandum of Law In Support ("Def. Memo.") (Dkt. No. 21). However, cases which have addressed the question of the Convention's scope and applicability, have repeatedly held the scope to be less expansive than *all* international transportation.

In fact, the Second Circuit has noted that "the Convention does not apply to all claims of injuries suffered in conjunction with international air travel." *Pflug v. Egyptair Corp.*, 961 F.2d 26, 28 (2d Cir. 1992). Instead, the Court looked at whether or not the claims fell within the three possible types of carrier liability forged by the Convention. *Id.* "The text of the Warsaw Convention does not state that it is exclusive as to all causes of action arising out of international air flight; rather, it merely states that it is exclusive

as to causes of action governed by its liability provisions" *Walker v. Eastern Air Lines, Inc.,* 785 F.Supp. 1168, 1170 (S.D.N.Y. 1992). The Convention's three liability provisions are described as follows:

(1) **Article 17** provides carrier liability for the death or bodily injury of a passenger, or the destruction, loss of, or damage to checked baggage provided that the harm "took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

(2) **Article 18** provides carrier liability "for damage sustained in the event of the destruction or loss of, or damage to, cargo upon the condition only that the event which caused the damage so sustained took place during the carriage by air."

(3) **Article 19** provides carrier liability "for damage occasioned by delay in the carriage by air of passengers, baggage or cargo."

*Weiss v. El Al Israel Airlines, Ltd.*, 433 F.Supp.2d 361, 365 (S.D.N.Y. 2006). Neither Plaintiff's negligent infliction of emotional distress nor nuisance claims fall within the scope of the Convention. It is fairly straightforward that neither Article 17 nor Article 18 could even conceivably be applied to Plaintiff's claims and indeed, THY does not even propound the argument. Instead, Defendant contends that Plaintiff's claims stem from Article 19, the provision of the Convention dealing with liability arising from airplane delays. *See* Pg. 12 Def. Memo. As discussed in further detail in Section III (B) below, this proposition simply doesn't fly.

Removal to this Court was inappropriate in the first instance as the Convention does not apply and none of the causes of action are governed by Articles 17, 18 or 19. *See Donkor v. British Airways Corp.*, 62 F.Supp.2d 963, 969 (E.D.N.Y. 1999) (holding that where airline failed to establish that the Convention applied to passengers' claims, there existed no basis for removal to federal court). It is respectfully submitted that if this Court finds the Montreal Convention to be inapplicable to any of Plaintiff's claims, this

action must be remanded to state court, as there exists no other basis for federal subject matter jurisdiction. *See Kamanou-Goune v. Swiss Int'l Airlines*, 2009 WL 874600, at *4 (S.D.N.Y. 2009) (finding that action was improperly removed to Federal Court where claim fell outside of the scope of the Montreal Convention and Defendant failed to proffer any other basis for federal subject matter jurisdiction).

The inapplicability of the Montreal Convention to the claims involved in the instant proceeding raises a paramount implication. While this Court does not have subject matter jurisdiction over Plaintiff's claims because the Montreal Convention does not apply and no other basis for federal subject matter jurisdiction exists, Plaintiff must not be barred from bringing this action in an appropriate United States court, such as the Supreme Court of New York County. Consequently, remand to state court is proper and warranted under these circumstances.

**B.      Plaintiff's State Law Claims Are Not Preempted**

The Montreal Convention does not preempt Plaintiff's negligent infliction of emotional distress and nuisance claims. Article 29 of the Montreal Convention describes its preemptive effect, stating that, "in the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention …" The Second Circuit, in interpreting the preemptive effect of the Warsaw Convention[1], has held that "all state law claims that fall within the

---

[1] On November 4, 2003, the treaty popularly known as the Montreal Convention entered into force in the United States, superseding a prior air carriage treaty commonly known as the Warsaw Convention. *See Ehrlich v. Am. Airlines, Inc.,* 360 F.3d 366, 371 (2d Cir. 2004).

scope of the Convention are preempted." *Id.* However, under the facts at hand, Plaintiff's state law claims are not preempted by the Montreal Convention because they fall outside of its scope.

This dispute involves a claim of negligent infliction of emotional distress, with Plaintiff suffering emotional injuries as a result of THY erroneously alerting him that his return flight to Hong Kong was cancelled, and subsequently ignoring his and his attorney's efforts to decipher the situation. *See* Complaint ¶¶ 11, 13. Second Circuit District Courts have repeatedly found preemption to be inappropriate in actions where "Plaintiffs invoke traditional elements of tort law …" *Pittman v. Grayson,* 869 F.Supp. 1065, 1072-73 (S.D.N.Y. 1994); *see also Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 284 (S.D.N.Y. 1994) (holding that Plaintiff's state law claims of negligence and false imprisonment not preempted); *and see Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197, 200 (E.D.N.Y. 1994) (no preemption of claims of intentional infliction of emotional distress and false imprisonment).

Ostensibly, Plaintiff's claims are traditional tort claims and do not involve "death or bodily injury of a passenger" or "destruction, loss of, or damage to checked baggage" (*see* **MC**, Article 17) or "the destruction or loss of, or damage to, cargo (*see* **MC**, Article 18). Article 19 of the Montreal Convention, which Defendant contends is the applicable statute, provides that "the carrier is liable for damaged occasioned by *delay* in the carriage by air of passengers …" (emphasis added). At no point has Plaintiff posited that he, nor any of his traveling companions, were delayed by Defendant. Plaintiff's claims accrued as a result of Defendant's negligence long before his flight from Catania, Italy to Hong Kong.

Despite the uncontested fact that Plaintiff was never delayed, Defendant's argues that Article 19 of the Montreal Convention applies and preempts the state law claims because Plaintiff feared being delayed. *See* Pg. 4 Def. Memo. Even if, *in arguendo*, Plaintiff's state of mind was relevant for purposes of whether or not Article 19 applies, which it is not, Defendant mischaracterizes Plaintiff's distress. If anything, Plaintiff's emotional anguish was a result of his fear of being bumped from the flight, because it had been communicated to him that the flight was cancelled, rather than delayed.

The Southern District of New York has repeatedly found that the Montreal Convention does not apply to claims concerning Plaintiffs being bumped from flights, instead of being delayed. *See e.g. Weiss* 433 F.Supp.2d at 369 ("[P]laintiff's bumping claims should be read as grounded in a cause of action for non-performance of contract, and not delay. They are, therefore, not preempted by the Montreal Convention"); *and see Mahaney v. Air France*, 474 F.Supp. 532, 535 (S.D.N.Y. 1979) (holding that Plaintiff's bumping claim was not a claim for delay because it did not stem from delay but rather from the airline's failure to perform the contract in the first place). Despite Defendant's best efforts to portray the proceedings as Plaintiff's gripe about being delayed, which would thereby presumably implicate Article 19, the focus of the instant action must Plaintiff's claims for mental suffering, which is outside of the scope of the Montreal Convention and therefore not preempted.

The Supreme Court has held that Plaintiff is not precluded from pursuing her claim under state law where the claim was outside of the scope of the Montreal Convention. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 171 (1999) ("The Convention's preemptive effect on local law extends no further than the Convention's

own substantive scope. A carrier, therefore, is indisputably subject to liability under local law for injuries arising outside of that scope"); *see also In re Nigeria Charter Flights Contract Litigation*, 520 F.Supp.2d 447, 455 (E.D.N.Y. 2007) (holding that because Plaintiff's state law claims are not grounded in delay within the substantive scope of Article 19, Article 19 does not preempt Plaintiff's from pursuing those claims). Plaintiff's claims under the facts at hand are not preempted as they are not within the scope of Article 19, or any other provision of the Montreal Convention.

## C. Plaintiff Is Not Bound By Article 33's Forum Limitations

Defendant contends that Plaintiff must be subjected to the jurisdictional provisions of Article 33 because Plaintiff's claims arise from "international transportation", as mentioned in Article 1(1) of the Montreal Convention. *See* Pg. 10 Def. Memo. In making the determination of whether or not a Plaintiff must be constrained by the forum limitations of Article 33, "[a]s a threshold matter, the Court must determine whether the Convention applies to Plaintiff's claims." *Pflug* at 28-29. The *Pflug* Court went on to elaborate that "when an action is one that falls within the province of the Convention, and the Convention does not authorize suit in the jurisdiction in which the action is brought, our inquiry ceases.... However, the Convention does not apply to all claims of injury suffered in conjunction with international air travel; thus, as an initial matter this Court must determine whether the Convention applies to all of plaintiffs' claims" *Id.*

The overwhelming weight of Second Circuit legal authority requires a court to determine whether the Convention's liability provisions apply to all of Plaintiff's claims, prior to evaluating whether Plaintiff has met the conditions and limits of the Convention.

*Shen v. Japan Airlines*, 1994 WL 167989, at *2 (S.D.N.Y. 1994); *see also Malik v. Butta,*

1993 WL 410168, at *3 (S.D.N.Y. 1993) (determining Plaintiff's claims to be cognizable

only under the Convention before evaluating subject matter jurisdiction); *and see Pflug,*

at 30 (holding that the question of whether Defendant is a "carrier" under Article 17 was

"obviously antecedent to an examination of whether the United States was one of the

jurisdictions in which [the Convention] allowed Plaintiffs to proceed against the carrier").

Consequently, because the Convention is inapplicable to any of the involved claims, as

discussed above, Plaintiff must not be limited by Article 33's forum provisions.

## IV.  SUMMARY JUDGMENT IS INAPPROPRIATE AT THIS JUNCTURE

Plaintiff respectfully withdraws its claim for nuisance against THY. Nevertheless,

as shown below, summary judgment is inappropriate at this time as Plaintiff will be able

to raise genuine issues of material facts, especially if he is permitted to conduct

discovery, and illustrate that he has suffered emotional distress as a proximate result of

Defendant's negligent conduct.

### A.    Whether Or Not Plaintiff Suffered Emotional Distress As A Result of THY's Negligence Is A Question For The Jury

In order for a claim for negligent infliction of emotional distress to survive under

New York law, Plaintiff need not be physically injured, *Kennedy v. McKesson Co.,* 58

N.Y.2d 500 (1983), or even have his physical safety unreasonably endangered. *See*

*Martell v. St. Charles Hospital*, 523 N.Y.S.2d 342 (Sup. Ct. Suffolk Co. 1987) (holding

that Plaintiff need not have been exposed to physical injury unless Plaintiff was a third

party asserting a claim for negligent infliction of emotional distress); *see also Jensen v.*

*L.C. Whitford Co.,* 167 A.D.2d 826, 827 (4th Dep't 1990) ("Physical injury is not a

necessary component of a cause of action for negligent infliction of emotional distress");

*and see Garcia v. Lawrence Hosp.,* 5 A.D.3d 227, 228 (1st Dep't 2001) ("There is no requirement that Plaintiff must be in fear of his or own physical safety").

Under New York law, a Plaintiff can recover for damages for negligent infliction of emotional distress for injuries, physical or mental, incurred by right, trauma, anguish or distress negligently induced. *See Allinger v. City of Utica*, 641 N.Y.S.2d 959 (4th Dep't 1990). In fact, New York law recognizes that a Plaintiff has a claim for negligent infliction of emotional distress, even without fear for his or her own physical safety, where there is "an especial likelihood of genuine and serious mental distress, arising from … special circumstances, which serves as a guarantee that the claim is not spurious" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). By virtue of Plaintiff's status as an acclaimed film producer and his direct role in the immensely costly production of RoboGirls, it is reasonable to posit that a finder of fact could determine that special circumstances existed and caused Plaintiff serious mental distress.

Under New York law, to state a claim for negligent infliction of emotional distress, Plaintiff must allege an (1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; (3) and severe emotional distress. *See Krzesaj v. New York City Department of Education*, 2017 WL 1031276, at *13 (S.D.N.Y. 2017); *see also Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.,* 702 F.Supp.2d 122, 134 (E.D.N.Y. 2010) (same). Recovery is permitted for strictly emotional injuries suffered, even when Plaintiff incurs no physical injury, when a Defendant owes Plaintiff a direct duty. *Kennedy* 58 N.Y.2d at 504-05. Without the benefit of discovery, it is difficult to pinpoint the precise duty owed by Defendant to

Plaintiff, but it is reasonable to posit that as a customer and passenger, Plaintiff was owed a direct duty by THY.

The prerequisite of "extreme and outrageous" conduct is not designed to impose an unattainable standard for alleging a claim of negligent infliction of emotional distress. Rather, this requirement was imposed because, as a matter of public policy, the courts should not be used to redress mere threats, petty oppressions or other trivial incidents which must be necessarily expected. *See James v. Saltsman*, 99 A.D.2d 797 (2d Dep't 1984). Following, unless the alleged conduct can, as a matter of law, be described as a mere threat, petty or a trivial incident which must necessarily be expected, a jury question is presented and summary judgment is inappropriate. *See e.g. Halio v. Lurie,* 15 A.D.2d 62, 65 (2d Dep't 1961) ("It will be for the trier of facts to determine whether … the conduct of Defendant was such that it may be said that it went beyond all reasonable bounds of decency"). Certainly, with the general public's increasingly growing disdain for the airline industry and its indifference towards its customers, it is plausible that a jury could find that cancelling Plaintiff's reservation without cause, ignoring and refusing his demands to provide an explanation for the cancellation and leading Plaintiff to believe that he would be stranded in a foreign country, would amount to conduct that goes beyond all reasonable doubts of decency.

The second factor necessary to state a claim for negligent infliction of emotional distress, a causal connection between the conduct and the injury, is certainly not ripe for summary judgment. It is more than reasonable to posit that a fact finder would determine that Plaintiff's injuries were a proximate result of Defendant's conduct. Summary judgment is also premature with regards to the third and final factor, which requires that

Plaintiff suffers severe emotional distress. There have been no psychiatric evaluations nor expert testimony in this matter, Plaintiff has not been deposed and THY has not propounded any evidence, beyond conclusory allegations, that Plaintiff did not suffer emotional distress. Certainly, a genuine issue of fact persists as to whether or not Plaintiff suffered severe emotional distress, making summary judgment inappropriate at this juncture.

## V.    CONCLUSION

Based on the foregoing, it is respectfully submitted that THY's Motion for Summary Judgment must be denied in its entirety. In the event that the Court finds in favor of Defendant on any issue, Plaintiff respectfully requests that discovery be re-opened and that Plaintiff be permitted to propound discovery requests upon THY. In the event that the Court finds in favor of Defendant on any issue, and denies Plaintiff's request to serve its discovery requests, Plaintiff respectfully requests leave to amend its pleading.

Dated:  New York, New York
        July 10, 2017

**Morton & Associates LLP**

By: _____
Roman A. Popov, Esq.
*Attorneys for Plaintiff*
Michael Gleissner
246 West Broadway
New York, NY 10013
Telephone: (212) 796-4309
rp@moas.com