UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL GLEISSNER,
                Plaintiff,

-v-

TURK HAVA YOLLARI ANONIM ORTAKLIGI,
                Defendant.

16-CV-8287 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Michael Gleissner brings this suit against Defendant Turk Hava Yollari Anonim Ortakligi (the Turkish air carrier that does business as Turkish Airlines) ("THY"), alleging negligent infliction of emotional distress under New York law in connection with a cancelled airline flight. THY moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 17.) For the reasons that follow, the motion is granted.

**I.    Background**

The following facts are taken from the Complaint and the parties' respective statements of undisputed material facts and are not subject to a genuine dispute except where otherwise noted.

Gleissner is a film producer, director, screenwriter, and actor. (Dkt. No. 18-1 ("Compl.") ¶ 6.) When the events at issue here occurred, Gleissner was allegedly involved in producing a television series called "RoboGirls." (*Id.* ¶ 8.) On August 25, 2016, while in Hong Kong, Gleissner purchased tickets through Expedia.com for himself and his family to travel on THY from Singapore to Catania, Italy, on August 25, 2016, and then from Catania to Hong Kong on August 28, 2016. (Dkt. No. 27 ("Pl.'s SUF") ¶ 4; Compl. ¶ 7–9; Dkt. No. 18-5 at 7.) On August 28, 2016, the same day he was scheduled to fly to Hong Kong, Gleissner decided to extend his

1

family's vacation in Italy and attempted to change his return flight using Expedia.com. (*Id.* ¶ 7; Compl. ¶ 7–9; Dkt. No. 18-5 at 7.) The modified itinerary would have provided for Gleissner to depart Catania for Hong Kong on September 1, 2016. (*Id.*) However, THY claims that Expedia.com was unable to cancel Gleissner's original ticket to fly from Catania to Hong Kong on August 28, 2016, and as a result he was listed as a "no show" for his initial reservation. (Dkt. No. 19 ¶ 6.) Several hours after attempting to change his reservation, Gleissner received an email from Expedia.com, notifying him that his reservations to travel from Catania to Hong Kong on September 1, 2016, had been cancelled. (Pl.'s SUF ¶ 9.) The cancellation was ultimately reversed, and Gleissner and his family traveled to Hong Kong on THY on September 1, 2016, as Gleissner intended when he first modified his itinerary. (Pl.'s SUF ¶ 12.)

Nonetheless, Gleissner alleges that THY "did not offer to remedy the situation for an unreasonable period of time." (Compl. ¶ 25.) He further alleges that the initial cancellation email caused him to suffer "severe anxiety and emotional distress, when faced with the possibility of substantial economic loss as a result of not being able to return to Hong Kong in time to oversee production of RoboGirls" (*Id.* ¶ 21), and that he suffered emotional distress because he feared that "any delay in his return would have resulted in tremendous economic loss." (*Id.* ¶ 17.)

Gleissner filed this suit in September 2016 in New York state court, alleging negligent infliction of emotional distress and nuisance under New York law. (Compl. ¶ 1.) However, Gleissner has since withdrawn his nuisance claim. (Dkt. No. 25 at 20.) THY[1] removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. No. 1 at 1.) At the time of

---

[1] On October 18, 2016, the parties entered into a stipulation to amend the name of the defendant from "Turkish Airlines, Inc." to "Turk Hava Yollari Anonim Ortakligi," a "foreign corporation duly established and existing under the laws of Turkey." (Dkt. No. 1-2.)

removal, THY believed Gleissner to be a U.S. citizen and a resident of the state of New York. *Id.* at 2. At an initial pretrial conference on December 7, 2016, it became clear that Gleissner is a citizen of Germany and a permanent resident of Hong Kong, and neither a U.S. citizen nor a resident of New York. (*See* Pl.'s SUF ¶¶ 1–2; Dkt. No. 15 at 4.) Based on this revelation, the Court ordered THY to demonstrate a different basis for subject matter jurisdiction. (Dkt. No. 14 at 4.) In response, THY argued that the Court has federal question jurisdiction based on the Montreal Convention.[2] (Dkt. No. 15 at 4–5.)

In a status report dated April 13, 2017, THY then notified the Court that it intended to file a motion to dismiss for lack of personal jurisdiction and for improper forum under the Montreal Convention. (Dkt. No. 16 at 2–3.) THY never filed a motion to dismiss, but on June 5, 2017, THY filed this motion for summary judgement. (Dkt. No. 17.)

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "If the party with the burden of proof makes the requisite initial showing, the burden

---

[2] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, ICAO Doc. No. 9740 (entered into force Nov. 4, 2003).

shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 250–51). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

**III. Discussion**

THY contends that it is entitled to summary judgment based on lack of personal jurisdiction,[3] among other reasons.[4] (Dkt. No. 21 at 6.)

---

[3] Lack of personal jurisdiction, like most affirmative defenses, may be forfeited as a result of a party's course of conduct during litigation. *See, e.g.*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999). Despite the fact that THY raised a personal jurisdiction defense in its answer, in compliance with Federal Rule of Civil Procedure 12(h), a "'delay in challenging personal jurisdiction by motion to dismiss' may result in [forfeiture], 'even where . . . the defense was asserted in a timely answer.'" *Id.* at 60 (second alteration in original) (quoting *Datskow v. Teledyne, Inc.,* 899 F.2d 1298, 1303 (2d Cir. 1990)).

Although personal jurisdiction defenses are most often asserted in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), Gleissner does not contend that THY forfeited its personal jurisdiction defense here. Furthermore, even if Gleissner were to raise a forfeiture argument in response to THY's personal jurisdiction defense, the Court would likely conclude that the defense has not been forfeited. In this case, "considerable pretrial activity" has not occurred, *contra Hamilton*, 197 F.3d at 61; to the contrary, Plaintiff has conducted no discovery. Nor has Defendant "participated in pretrial proceedings" while "never mov[ing] to dismiss for lack of personal jurisdiction despite several clear opportunities to do so" since filing its answer. *Contra id.* at 62 (rejecting a personal jurisdiction defense where the defendant failed to raise the issue of personal jurisdiction for four years after its answer.)

[4] For example, THY also moves for summary judgment based on lack of subject matter jurisdiction. (Dkt. No. 21 at 14–17.) Although "[t]he Supreme Court has made clear that a court should not assume 'hypothetical jurisdiction' over a case for purposes of adjudicating the merits when its jurisdiction is 'in doubt,'" *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 101 (1998)), it has also recognized that "in cases removed from state court to federal

4

Personal jurisdiction over a foreign defendant is proper only if (1) the laws of the forum state authorize personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction would comport with the Due Process Clause of the United States Constitution. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Courts may exercise either specific or general personal jurisdiction over a defendant. *See, e.g.*, *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). "General jurisdiction renders a defendant amenable to suit on all claims." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015). Specific jurisdiction subjects a defendant to suit on claims that "arise from conduct related to the forum." *Id*. Here, Gleissner claims that the Court may assert either general or specific jurisdiction over THY. The Court disagrees.

### A. General Jurisdiction

"Under New York law, a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citing N.Y. C.P.L.R. § 301). However, to establish general jurisdiction, Gleissner must also satisfy the requirements of the Due Process Clause. *Daimler*, 134 S. Ct. at 751; *Cortlandt St. Recovery Corp.*, 2015 WL 5091170, at *3 (noting courts must consider, in addition to New York law, "whether exercising personal jurisdiction would comport with the due

---

court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). Therefore, "a court need not make a difficult determination as to subject matter jurisdiction when another clear threshold defect would warrant 'denying audience to a case on the merits.'" *Facebook*, 797 F.3d at 155 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431 (2007)). Thus, it is within the Court's discretion to resolve this motion for summary judgment on personal jurisdiction grounds, without reaching the subject matter jurisdiction issue. *Ruhrgas*, 526 U.S. at 588.

process constraints imposed by the Fourteenth Amendment," and expressing uncertainty as to whether "New York's 'doing business' jurisdiction remains viable in light of *Daimler*"). Because Gleissner cannot establish that it would comport with due process to exercise general jurisdiction over THY, the Court need not consider whether general jurisdiction would be consistent with New York state law. *See, e.g.*, *Hood v. Ascent Med. Corp.*, 691 F. App'x 8, 10 (2d Cir. 2017) (declining to address the scope of general jurisdiction under New York law where exercising general jurisdiction was clearly inconsistent with due process); *Sonera Holding B.V.*, 750 F.3d at 224–25 & n.2 (same).

Under *Daimler*'s due process test, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state.'" *Daimler*, 134 S. Ct. at 761 (first alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Under this test, "a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business," "[e]xcept in a truly 'exceptional' case." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38–39 (2d Cir. 2014)); *see also Cortlandt St. Recovery Corp.*, 2015 WL 5091170, at *3 ("There are very limited circumstances that render a corporation 'at home' in a forum outside of its place of incorporation and principal place of business.").

These principles of due process preclude the Court from exercising personal jurisdiction over THY. New York is neither THY's state of incorporation nor its principal place of business: THY is a corporation domiciled in Turkey with its principal place of business in Turkey. (Pl.'s

SUF ¶ 3.) Thus, general jurisdiction over THY in New York is improper absent truly exceptional circumstances.

Gleissner makes two arguments in support of his contention that general jurisdiction is proper. First, he proffers an "agency" theory, under which the activities of THY's subsidiary or agent in New York purportedly give rise to general jurisdiction. (Dkt. No. 25 at 4–6.) This argument is foreclosed, however, by Second Circuit and Supreme Court precedents, which have expressly "rejected so expansive an understanding of 'agency' as a basis for general jurisdiction." *Hood*, 691 F. App'x at 10; *Daimler*, 134 S. Ct. at 760 (holding that foreign corporations may not be subject to general jurisdiction "whenever they have an in-state subsidiary or affiliate")).

Second, Gleissner argues (without once citing *Daimler*'s controlling "essentially-at-home" test) that general jurisdiction is proper because THY "maintains an interactive website . . . accessible from within New York, through which it not only promotes and solicits New York customers, but . . . conducts business and enters into contracts with . . . New York customers." (Dkt. No. 25 at 6.) This "solicitation plus" theory also fails as a matter of law: "It is well-established that a website accessible to New York residents—even a website with interactive components—is insufficient to support general jurisdiction." *UTC Fire & Sec. Ams. Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 371 (S.D.N.Y. 2012).

Gleissner has failed to meet his burden to demonstrate that this is an "'exceptional case' in which a corporation is 'essentially at home' in a foreign forum." *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (citing *Daimler*, 134 S. Ct. at 761 n.19); *Sonera Holding B.V.*, 750 F.3d at 226 (holding that no general jurisdiction existed despite a substantial

and systematic course of business, including negotiations, transactions, and offices in New York).

B. **Specific Jurisdiction**

The Court must engage in a two-step inquiry to determine whether specific jurisdiction over a foreign defendant is proper. "First, the Court must look to the relevant jurisdictional statute of the state in which it sits: New York." *Facchetti v. Bridgewater Coll.*, No. 14 Civ. 10018, 2015 WL 3763970, at *1 (S.D.N.Y. June 16, 2015). "Then, '[i]f the exercise of jurisdiction is appropriate under that statute, the [C]ourt must decide whether such exercise comports with the requisites of due process.'" *Id.* (alternations in original) (quoting *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001)). Because exercising specific jurisdiction in this case would not comport with New York law, the Court need not consider whether exercising specific jurisdiction would also violate due process. *See, e.g.*, *Hood*, 691 F. App'x at 11; *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 809 (S.D.N.Y. 2015).

New York's long-arm statute permits a court to exercise personal jurisdiction in cases where a non-domiciliary: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state;" (3) "commits a tortious act" outside the state that "caus[es] injury to [a] person or property within the state;" or (4) "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a). Here, Gleissner contends that THY is subject to specific jurisdiction under § 302(a)(1) because it transacts business within the state of New York. (Dkt. No. 25 at 9–11.)

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,

8

450 F.3d 100, 103 (2d Cir. 2006). Even if THY meets the first prong of this test, Gleissner's cause of action does not arise from any of THY's business activity in the forum; therefore, the second prong of the test under § 302(a)(1) is not satisfied.

"A suit will be deemed to have arisen out of a party's activities in New York if there is 'an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (quoting *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)). "The 'arising from' prong of section 302(a)(1) does not require a causal link, but rather requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former . . . .'" *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 477 (E.D.N.Y. 2015) (alteration in original) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)). "[W]here at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012).

In this case, however, there is no "articulable nexus" or "substantial relationship" between Gleissner's NIED claim and New York. It is undisputed that Gleissner is a German citizen and a permanent resident of Hong Kong. (Pl.'s SUF ¶¶ 1–2.) It is similarly undisputed that Gleissner purchased his ticket in Hong Kong and that his ticket was for international travel among Singapore, Turkey, Italy, and Hong Kong—a list of destinations from which New York is conspicuously absent. (*Id.* ¶¶ 4–5.) Furthermore, it is undisputed that Gleissner changed his reservations while in Italy, and that his travel terminated in Hong Kong. (*Id.* ¶¶ 6, 8.) Any alleged harm to Gleissner would have occurred either in Hong Kong (where he lived and planned to continue his work on "RoboGirls" upon returning) or perhaps in Italy, where he was

9

vacationing and attempting to resolve any confusion over his travel plans.  At no point, however, did THY's allegedly tortious conduct involve the state of New York.

Again, Gleissner points to THY's maintenance of an interactive website as a potentially sufficient nexus between THY's transaction of business in New York and Gleissner's negligent infliction claim.  (Dkt. No. 25 at 10–11.)  However, there is no relationship between THY's website and Gleissner's purchase of airline tickets through Expedia.com.  Simply put, there is no basis for the Court to find a relationship between THY's interactive website, New York, and Gleissner's cause of action, which involved an international airline ticket purchased in Hong Kong through a third party.  Accordingly, § 302(a)(1) does not authorize the Court to exercise personal jurisdiction in this case.

## IV.  Conclusion

For the foregoing reasons, THY's motion for summary judgment is GRANTED.  The Clerk of Court is directed to close the motion at Docket Number 17 and to close this case.

SO ORDERED.

Dated: January 17, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge